# EDELMAN *v.* LYNCHBURG COLLEGE

No. 00–1072.   Argued January 8, 2002—Decided March 19, 2002

*Eric Schnapper* argued the cause for petitioner. With him on the briefs was *Elaine Charlson Bredehoft.*

*Lisa S. Blatt* argued the cause for the United States et al. as *amici curiae* urging reversal. With her on the brief were *Solicitor General Olson, Assistant Attorney General Boyd, Deputy Solicitor General Clement, Paul R. Q. Wolfson, Philip B. Sklover,* and *Barbara L. Sloan.*

*Alexander W. Bell* argued the cause for respondent. With him on the brief was *Mary V. Barney.**

JUSTICE SOUTER delivered the opinion of the Court.

The scheme of redress for employment discrimination under Title VII of the Civil Rights Act of 1964, as amended, requires a complainant to file a "charge" with the Equal Employment Opportunity Commission within a certain time

---

**Ann Elizabeth Reesman* and *Rae T. Vann* filed a brief for the Equal Employment Advisory Council as *amicus curiae* urging affirmance.

*Paula A. Brantner* filed a brief for the National Employment Lawyers Association as *amicus curiae.*

after the conduct alleged, 78 Stat. 259, 42 U. S. C. § 2000e–5(e)(1) (1994 ed.), and to affirm or swear that the allegations are true, § 2000e–5(b). The issue here is the validity of an EEOC regulation permitting an otherwise timely filer to verify a charge after the time for filing has expired. We sustain the regulation.

I

On June 6, 1997, respondent Lynchburg College denied academic tenure to petitioner Leonard Edelman, who faxed a letter to an EEOC field office on November 14, 1997, claiming "gender-based employment discrimination, exacerbated by discrimination on the basis of . . . national origin and religion." App. 52. Edelman made no oath or affirmation.

On November 26, 1997, Edelman's lawyer wrote to the field office requesting an interview with an EEOC investigator and stating his "understanding that delay occasioned by the interview will not compromise the filing date, which will remain as November 14, 1997." *Id.*, at 54. An EEOC employee replied to Edelman and advised him to arrange an interview with a member of the field office. Without referring to the lawyer's letter, the employee reminded Edelman that "a charge of discrimination must be filed within the time limits imposed by law." *Id.*, at 57. In Edelman's case, the filing period was 300 days after the alleged discriminatory practice.[1]

After the interview, the EEOC sent Edelman a Form 5 Charge of Discrimination for him to review and verify by

---

[1] A Title VII complainant generally has 180 days from the time of the alleged unlawful employment practice to file with the EEOC, 42 U. S. C. § 2000e–5(e)(1) (1994 ed.), but a 300-day filing period applies if the charging party "institute[s] proceedings with a State or local agency with authority to grant or seek relief" from unlawful employment practices. *Ibid.;* see also *EEOC* v. *Commercial Office Products Co.*, 486 U. S. 107, 110 (1988). Virginia has such an agency, operating under a work-sharing agreement with the EEOC. See *Tinsley* v. *First Union Nat. Bank*, 155 F. 3d 435, 439–442 (CA4 1998).

oath or affirmation. On April 15, 1998, 313 days after the June 6, 1997, denial of tenure, the EEOC received the verified Form 5, which it forwarded to the College for response. After completing an investigation, the EEOC issued Edelman a notice of right to sue.

Edelman first sued in a Virginia state court on various state-law claims, but later added a cause of action under Title VII, 42 U. S. C. § 2000e–2(a)(1). The College then removed the case to Federal District Court and moved to dismiss, claiming that Edelman's failure to file the verified Form 5 with the EEOC within the applicable filing period was a bar to subject-matter jurisdiction. Edelman replied that his November 1997 letter was a timely filed charge and that under an EEOC regulation, 29 CFR § 1601.12(b) (1997),[2] the verification on the Form 5 related back to the letter.

The District Court found, however, that the November letter was not a "charge" within the meaning of Title VII because neither Edelman nor the EEOC treated it as one, App. to Pet. for Cert. 22–24, with the consequence that there was no timely filing to which the verification on Form 5 could relate back. After finding no ground for equitable tolling of the filing requirements, the District Court dismissed the Title VII complaint and remanded the state-law claims. *Id.,* at 24–25.

A divided panel of the Court of Appeals affirmed. 228 F. 3d 503, 512 (CA4 2000). The majority held that the plain language of the statute foreclosed the EEOC regulation

---

[2] The regulation provides in relevant part that "a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received."

allowing a later oath to relate back to an earlier charge. The majority reasoned that the verification and filing provisions in § 706 of Title VII[3] were interdependent in defining "charge": "Because a charge requires verification . . . , and because a charge must be filed within the limitations period, . . . it follows that a charge must be verified within the limitations period." *Id.*, at 508.

Judge Luttig concurred only in the judgment. *Id.*, at 512–513. He said that although the majority probably had "the better interpretation" of the statute, *id.*, at 513, its reading of the filing and verification requirements as one was not compelled by the language, and the court was "bound to give deference" to the EEOC's construction, *ibid.* He nonetheless joined in the judgment for the District Court's reasons.

Because of a conflict among the Courts of Appeals,[4] we granted certiorari, 533 U. S. 928 (2001), and now reverse.

---

[3] Section 706(b) reads in relevant part that "[w]henever a charge is filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission, alleging that an employer . . . has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge . . . on such employer . . . within ten days, and shall make an investigation thereof. Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U. S. C. § 2000e–5(b). As to filing, § 706(e)(1) provides that "[a] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge . . . shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . , such charge shall be filed . . . within three hundred days after the alleged unlawful employment practice occurred." § 2000e–5(e)(1).

[4] Compare, *e. g.*, 228 F. 3d 503, 509 (CA4 2000) (case below); *Shempert* v. *Harwick Chemical Corp.*, 151 F. 3d 793, 796–797 (CA8 1998), with *Philbin* v. *General Electric Capital Auto Lease, Inc.*, 929 F. 2d 321, 323–324 (CA7 1991) *(per curiam); Peterson* v. *Wichita*, 888 F. 2d 1307, 1308 (CA10 1989),

II

A

Section 706 of the Civil Rights Act of 1964, as amended, 42 U. S. C. § 2000e–5, governs the filing of charges of discrimination with the EEOC. Section 706(b) requires "[c]harges" to "be in writing under oath or affirmation . . . contain[ing] such information and . . . in such form as the Commission requires." § 2000e–5(b). Section 706(e)(1) provides that "[a] charge . . . shall be filed within one hundred and eighty [or in some cases, three hundred] days after the alleged unlawful employment practice occurred." § 2000e–5(e)(1).

Neither provision defines "charge," which is likewise undefined elsewhere in the statute. Section 706(b) merely requires the verification of a charge, without saying when it must be verified; § 706(e)(1) provides that a charge must be filed within a given period, without indicating whether the charge must be verified when filed. Neither provision incorporates the other so as to give a definition by necessary implication.

The assumption of the Court of Appeals that the two provisions must be read as one, with "charge" defined as "under oath or affirmation," was thus a structural and logical leap. Nor is the gap bridged by the rule of common sense that statutes are to be read as a whole, see *United States* v. *Morton,* 467 U. S. 822, 828 (1984). Although reading the two provisions together would not be facially inconsistent, doing that would ignore the two quite different objectives of the timing and verification requirements, which stand in the way of reading "charge" to subsume them both by definition. The point of the time limitation is to encourage a potential charging party to raise a discrimination claim before it gets

_____

cert. denied, 495 U. S. 932 (1990); *Casavantes* v. *California State Univ.,* 732 F. 2d 1441, 1443 (CA9 1984); *Price* v. *Southwestern Bell Tel. Co.,* 687 F. 2d 74, 77, and n. 3 (CA5 1982).

stale, for the sake of a reliable result and a speedy end to any illegal practice that proves out.[5]  The verification requirement has the different object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury.[6]  This object, however, demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC.  There is accordingly nothing plain in reading "charge" to require an oath by definition.  Questionable would be the better word.

## B

The statute is thus open to interpretation and the regulation addresses a legitimate question.  Before we touch on the merits of the EEOC's position, however, two threshold matters about the status of the regulation can be given short shrift.  The first is whether the agency's rulemaking exceeded its authority to adopt "suitable procedural regulations," 42 U. S. C. § 2000e–12(a), and instead addressed a substantive issue over which the EEOC has no rulemaking power, see *EEOC* v. *Arabian American Oil Co.*, 499 U. S. 244, 257 (1991); *General Elec. Co.* v. *Gilbert*, 429 U. S. 125, 141 (1976).  Although the College argues that the EEOC's regulation "alter[s] a substantive requirement included by Congress in the statute," Brief for Respondent 32–33, this is really nothing more than a recast of the plain language argument; the College is merely restating the position we

---

[5] See *Delaware State College* v. *Ricks*, 449 U. S. 250, 256–257 (1980) ("Limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past").

[6] See *EEOC* v. *Shell Oil Co.*, 466 U. S. 54, 76, n. 32 (1984) ("The function of an oath is to impress upon its taker an awareness of his duty to tell the truth").

just rejected, that Congress defined "charge" as a verified accusation.

The other issue insignificant in this case, however prominent it is in much of the litigation that goes on over agency rulemaking, is the degree of deference owed to the regulation by reviewing courts. We agree with the Government as *amicus* that deference under *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–844 (1984), does not necessarily require an agency's exercise of express notice-and-comment rulemaking power,[7] see Brief for United States et al. as *Amici Curiae* 19, n. 11; we so observed in *United States* v. *Mead Corp.*, 533 U. S. 218, 230–231 (2001) ("[W]e have sometimes found reasons for *Chevron* deference even when no such administrative formality was required and none was afforded"). But there is no need to resolve any question of deference here. We find the EEOC rule not only a reasonable one, but the position we would adopt even if there were no formal rule and we were interpreting the statute from scratch. Because we so clearly agree with the EEOC, there is no occasion to defer and no point in asking what kind of deference, or how much.[8]

---

[7] Title VII does not require the EEOC to utilize notice-and-comment procedures. Section 713(a) of Title VII requires the procedural regulations to "be in conformity with the standards and limitations" of the Administrative Procedure Act, 5 U. S. C. §§ 551–559. 42 U. S. C. § 2000e–12(a) (1994 ed.). And the Administrative Procedure Act, 5 U. S. C. § 553(b), excepts "rules of agency organization, procedure, or practice" from notice-and-comment procedures unless required by statute.

[8] We, of course, do not mean to say that the EEOC's position is the "only one permissible." See *Commercial Office Products*, 486 U. S., at 125 (O'CONNOR, J., concurring in part and concurring in judgment). The agency might, for example, have decided that the time to test the complainant's seriousness is before the agency expends any effort on the case, and so have required a verified complaint prior to interview. JUSTICE O'CONNOR suggests, see *post*, at 122 (opinion concurring in judgment), that recognizing this implies that a sphere of deference is appropriate, and so resolves the *Chevron* question. But not all deference is deference under *Chevron*, see *United States* v. *Mead Corp.*, 533 U. S. 218, 234 (2001),

## C

A complaint to the EEOC starts the agency down the road to investigation, conciliation, and enforcement, and it is no small thing to be called upon to respond. As we said before, the verification provision is meant to provide some degree of insurance against catchpenny claims of disgruntled, but not necessarily aggrieved, employees. In requiring the oath or affirmation, however, Congress presumably did not mean to affect the nature of Title VII as "a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *EEOC* v. *Commercial Office Products Co.,* 486 U. S. 107, 124 (1988); *Love* v. *Pullman Co.,* 404 U. S. 522, 527 (1972). Construing § 706 to permit the relation back of an oath omitted from an original filing ensures that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently. At the same time, the EEOC looks out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied.[9]

We would be hard pressed to take issue with the EEOC's position after deciding *Becker* v. *Montgomery,* 532 U. S. 757

---

and there is no need to resolve deference issues when there is no need for deference.

[9] The general practice of EEOC staff members is to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have been clarified. See Brief for United States et al. as *Amici Curiae* 24. The complainant must submit a verified charge before the agency will require a response from the employer. See Brief for United States et al. as *Amici Curiae* on Pet. for Cert. 16.

Respondent argues that the employer will be prejudiced by these procedures because "there would be no deadline for verifying a charge." Brief for Respondent 34, n. 26. But this is not our case, which simply challenges relation back *per se*, and our understanding is that the EEOC's standard practice is to caution complainants that if they fail to follow up on their initial unverified charge, the EEOC will not proceed further with the complaint. See App. 57; Brief for United States et al. as *Amici Curiae* on Pet. for Cert. 17.

(2001), last Term. In that case, we considered whether the Federal Rule of Civil Procedure 11 signature requirement entailed the dismissal of a notice of appeal that was timely filed in the district court but was not signed within the filing period. We held that while the timing and content requirements for the notice of appeal were "jurisdictional in nature," nothing prevented later cure of the signature defect, 532 U. S., at 765. There is no reason to think that relation back of the oath here is any less reasonable than relation back of the signature in *Becker.* Both are aimed at stemming the urge to litigate irresponsibly, and if relation back is a good rule for courts of law, it would be passing strange to call it bad for an administrative agency.[10] In fact, it would be passing strange to disagree with the EEOC even without *Becker,* for a long history of practice with oath requirements supports the relation-back cure.

Where a statute or supplemental rule requires an oath,[11] courts have shown a high degree of consistency in accepting later verification as reaching back to an earlier, unverified filing.[12] This background law not only persuades by its reg-

---

[10] We also note that Rule 15(c) of the Federal Rules of Civil Procedure permits the relation back of amendments to pleadings under specified circumstances.

[11] See, *e. g.,* Rule C(6) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("[A] person who asserts an interest in or right against the property that is the subject of the [civil forfeiture] action must file a verified statement identifying the interest or right").

[12] See, *e. g., United States* v. *United States Currency in Amount of $103,387.27,* 863 F. 2d 555, 561–563 (CA7 1988); *Johnston Broadcasting Co.* v. *FCC,* 175 F. 2d 351, 355–356 (CADC 1949); see also 5A C. Wright & A. Miller, Federal Practice and Procedure § 1339, p. 150 (2d ed. 1990) ("Even if a federal rule or statute requires verification, a failure to comply does not render the document fatally defective"). In *Armstrong* v. *Fernandez,* 208 U. S. 324, 330 (1908), we approved a bankruptcy court's allowance of *nunc pro tunc* verification of a petition filed under the Bankruptcy Act of 1898.

State-court practice before and after Congress enacted the Civil Rights Act of 1964 has been, for the greater part, the same as federal. See, *e. g., United Farm Workers of Am.* v. *Agricultural Labor Relations Bd.,* 37

ularity over time but points to tacit congressional approval of the EEOC's position, Congress being presumed to have known of this settled judicial treatment of oath requirements when it enacted and later amended Title VII.[13]

This presumption is complemented by the fact that Congress amended Title VII several times[14] without once casting doubt on the EEOC's construction.[15] During the

---

Cal. 3d 912, 915, 694 P. 2d 138, 140 (1985) (en banc); *Easter Seal Soc. for Disabled Children* v. *Berry,* 627 A. 2d 482, 489 (D. C. 1993); *Maliszewski* v. *Human Rights Comm'n,* 269 Ill. App. 3d 472, 474–477, 646 N. E. 2d 625, 626–628 (1995); *Workman* v. *Workman,* 46 N. E. 2d 718, 724 (Ind. App. 1943) (en banc); *Pulliam* v. *Pulliam,* 163 Kan. 497, 499–500, 183 P. 2d 220, 222–223 (1947); *Southside Civic Assn.* v. *Warrington,* 93–0890, pp. 3–4 (La. App. 4/1/94), 635 So. 2d 721, 723–724, pet. for writ denied, 94–1219 (La. 7/1/94), 639 So. 2d 1168; *Drury Displays, Inc.* v. *Board of Adjustment,* 760 S. W. 2d 112, 114 (Mo. 1998); *Chisholm* v. *Vocational School for Girls,* 103 Mont. 503, 506–509, 64 P. 2d 838, 841–842 (1936); *In re Estate of Sessions,* 217 Ore. 340, 347–349, 341 P. 2d 512, 516–517 (1959); *State ex rel. Williams* v. *Jones,* 164 S. W. 2d 823, 826 (Tenn. 1942); *Greene* v. *Union Pac. Stages, Inc.,* 182 Wash. 143, 145, 45 P. 2d 611, 612 (1935). But see, *e. g., Dinwiddie* v. *Board of County Comm'rs,* 103 N. M. 442, 445, 708 P. 2d 1043, 1046 (1985), cert. denied, 476 U. S. 1117 (1986) (denying leave to amend and dismissing unverified complaint contesting election).

[13] See *North Star Steel Co.* v. *Thomas,* 515 U. S. 29, 34 (1995) ("'[I]t is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [our] precedents . . . and that it expect[s] its enactment[s] to be interpreted in conformity with them'" (citation omitted)).

[14] See, *e. g.,* Pub. L. 102–166, 105 Stat. 1075; Pub. L. 92–261, 86 Stat. 104.

[15] Respondent argues that the regulation became inconsistent with Title VII when Congress passed the 1972 amendments to the legislation. Brief for Respondent 20–25, 37. In 1972, during the floor debate over the Senate version (S. 2515) of the Equal Employment Opportunity Act of 1972, Senator Allen noted that the committee amendments omitted the requirement that a charge be made under oath, and proposed an amendment to define a charge to "'mean an accusation of discrimination supported by oath or affirmation.'" 118 Cong. Rec. 4815 (1972). The Senator expressed his view that the amendment preserved what he believed to be an existing requirement under the 1964 Act that "charges are to be filed and made under oath in writing." *Ibid.* This understanding was neither confirmed nor denied, but Senator Williams, the bill's floor manager, suggested that rather than the "one coverall, blanket" definition proposed by Senator Allen, the oath requirement could be included at the beginning of

debates over the Equal Employment Opportunity Act of 1972, amending the Civil Rights Act of 1964, the text of the EEOC procedural regulations, including the predecessor of § 1601.12(b), was placed in the Congressional Record. 118 Cong. Rec. 718 (1972). By then the regulation was six years old, and had been upheld and applied by the federal courts.[16] By amending the law without repudiating the regulation, Congress "suggests its consent to the Commission's practice." *EEOC* v. *Associated Dry Goods Corp.*, 449 U. S. 590, 600, n. 17 (1981); see also *EEOC* v. *Shell Oil Co.*, 466 U. S. 54, 69 (1984).

### III

We accordingly hold the EEOC's relation-back regulation to be an unassailable interpretation of § 706 and therefore reverse. Our judgment does not, however, reach the conclusion drawn by the District Court, and the single judge on the Court of Appeals, that Edelman's letter was not a charge under the statute because neither he nor the EEOC

---

§ 706(b). *Ibid.* So modified, the amendment was adopted by voice vote and enacted into law.

Besides refining the language of § 706 of Title VII, the 1972 amendments extended the basic time period for filing a charge with the EEOC from 90 to 180 days, and from 210 to 300 days in deferral States. Pub. L. 92–261, 86 Stat. 104. Congress also added a requirement that the EEOC notify employers within 10 days of receiving a filed charge. *Ibid.* In view of the above-described exchange over the phrasing of the verification requirement, and because Congress enacted this requirement while at the same time amending the charge-filing deadline in § 706(e), respondent advocates our reading the 1972 amendments as a "congressional compromise." Brief for Respondent 24. We are asked, in other words, to conclude that Congress lengthened the time for filing charges only because Congress, at the same time, required that a charge necessarily be verified when first filed. The evidence for such a *quid pro quo* is, however, equivocal.

[16] See, *e. g.*, *Blue Bell Boots, Inc.* v. *EEOC*, 418 F. 2d 355, 357 (CA6 1969); *Georgia Power Co.* v. *EEOC*, 412 F. 2d 462, 466–467 (CA5 1969); *Weeks* v. *Southern Bell Tel. & Tel. Co.*, 408 F. 2d 228, 230–231 (CA5 1969); *Choate* v. *Caterpillar Tractor Co.*, 402 F. 2d 357, 359–360 (CA7 1968).

treated it as one. It is enough to say here that at the factual level their view has some support. Although § 706(e)(1) of Title VII provides that the "notice of the charge . . . shall be served upon the person against whom such charge is made within ten days" of filing with the EEOC, 42 U. S. C. §§ 2000e–5(b) and (e)(1), the Government's lawyer acknowledged at oral argument that the EEOC failed to "comply with its obligation to provide the employer with notice" within 10 days after receiving Edelman's letter of November 14, 1997. Tr. of Oral Arg. 16. Edelman's counsel agreed with the Government that the significance of the delayed notice to the College would be open on remand. *Id.*, at 9–10, 17.

Accordingly, we reverse the judgment of the Court of Appeals and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE THOMAS, concurring.

Congress has authorized the Equal Employment Opportunity Commission (EEOC) "to issue, amend, or rescind suitable procedural regulations to carry out the provisions of [Title VII]. Regulations issued under this section shall be in conformity with the standards and limitations of" the Administrative Procedure Act (APA). 42 U. S. C. § 2000e–12(a) (1994 ed.). The EEOC promulgated 29 CFR § 1601.12(b) (1997) pursuant to its clear statutory authority to issue procedural regulations. See § 1601.1 ("The regulations set forth . . . contain the *procedures* established by the Equal Employment Opportunity Commission for carrying out its responsibilities in the administration and enforcement of title VII . . ." (emphasis added)). I concur because I read the Court's opinion to hold that the EEOC possessed the authority to promulgate this procedural regulation, and that the regulation is reasonable, not proscribed by the statute, and issued in conformity with the APA.

JUSTICE O'CONNOR, with whom JUSTICE SCALIA joins, concurring in the judgment.

The Court today holds that there is no need in this case to defer to the Equal Employment Opportunity Commission's regulation because the agency's position is the one it "would adopt even if there were no formal rule and [the Court] were interpreting the statute from scratch." *Ante*, at 114. I do not agree that the EEOC has adopted the most natural interpretation of Title VII's provisions regarding the filing with the EEOC of charges of discrimination. See 42 U. S. C. § 2000e–5 (1994 ed.). But, because the statute is at least somewhat ambiguous, I would defer to the agency's interpretation. See *Chevron U. S. A. Inc.* v. *Natural Resources Defense Council, Inc.*, 467 U. S. 837, 843–844 (1984); *EEOC* v. *Commercial Office Products Co.*, 486 U. S. 107, 125 (1988) (O'CONNOR, J., concurring in part and concurring in judgment) ("[D]eference [to the EEOC] is particularly appropriate on this type of technical issue of agency procedure"). I think the regulation, 29 CFR § 1601.12(b) (1997), should be sustained on this alternative basis.

Title VII requires "charges" of discrimination to "be in writing under oath or affirmation." 42 U. S. C. § 2000e–5(b). It also requires "charge[s]" to "be filed within one hundred and eighty [or in some circumstances three hundred] days after the alleged unlawful employment practice occurred." § 2000e–5(e)(1). The most natural reading of these provisions is that the first is intended to be definitional, defining a "charge" as an allegation of discrimination made in writing under oath or affirmation. The second then specifies the time period in which such a verified charge must be filed. That Congress intended the provisions to be read together in this way is suggested by the fact that the two provisions are found in subsections of the same section of the statute. See *Davis* v. *Michigan Dept. of Treasury*, 489 U. S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and

with a view to their place in the overall statutory scheme"). Surprisingly, however, the Court holds that the best reading is precisely the opposite—it says it "clearly agree[s] with the EEOC" that charges do not need to be verified within the specified time period. See *ante*, at 114.

Despite the fact that I think the best reading of the statute is that a charge must be made under oath or affirmation within the specified time, this is not the only possible reading of the statute. The definition section of the statute, 42 U. S. C. § 2000e, which expressly defines a number of terms, does not define the word "charge" to mean an allegation made under oath or affirmation. In fact, the definition section does not define the word "charge" at all. And the provision stating that "charges shall be in writing under oath or affirmation" is not framed as a definition—it does not say, for example, that a charge *is* an allegation made in writing under oath or affirmation. Because the statute does not explicitly define "charge" to incorporate verification but only suggests it, the requirement that charges be verified and the requirement that charges be filed within the specified time could be read as independent requirements that do not need to be satisfied simultaneously. Congress, therefore, cannot be said to have *"unambiguously* expressed [its] intent" that the charge must be under oath or affirmation when filed. *Chevron*, 467 U. S., at 843 (emphasis added). Given this ambiguity, under our decision in *Chevron*, "the question . . . [becomes] whether the agency's [position] is based on a permissible construction of the statute," *ibid.*, or, in other words, whether the agency's position is "reasonable," *id.*, at 845. If so, then we must give it "controlling weight," *id.*, at 844.

I find the regulation to be reasonable for some of the same reasons that the Court finds it to be the best interpretation of the statute. As the Court notes, Title VII is " 'a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.' " *Ante*, at 115 (quoting *Com-*

*mercial Office Products Co., supra,* at 124). Permitting relation back of an oath omitted from an original filing is reasonable because it helps ensure that lay complainants will not inadvertently forfeit their rights. The regulation is also consistent, as the Court explains, with the common-law practice of allowing later verifications to relate back. See *ante,* at 116–117. For these reasons, I think the regulation is reasonable and should be sustained.

The Court reserved the question of whether the EEOC's regulation is entitled to *Chevron* deference. See *ante,* at 114. I doubt that it is possible to reserve this question while simultaneously maintaining, as the Court does, see *ante,* at 114–115, n. 8, that the agency is free to change its interpretation. To say that the matter is ambiguous enough to permit agency choice and to suggest that the Court would countenance a different choice is to say that the Court would (because it must) defer to a reasonable agency choice. Indeed, the concurring opinion that the Court cites for the proposition that the agency could change its position was premised on the idea that the agency was entitled to deference. See *Commercial Office Products Co., supra,* at 125–126 (O'CONNOR, J., concurring in part and concurring in judgment).

I think the EEOC's regulation is entitled to *Chevron* deference. We have, of course, previously held that because the EEOC was not given rulemaking authority to interpret the *substantive* provisions of Title VII, its substantive regulations do not receive *Chevron* deference, but instead only receive consideration according to the standards established in *Skidmore* v. *Swift & Co.,* 323 U. S. 134, 140 (1944). See *EEOC* v. *Arabian American Oil Co.,* 499 U. S. 244, 257 (1991) ("[T]he level of deference afforded [the agency's judgment] 'will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control' ")

(quoting *Skidmore, supra,* at 140); *General Elec. Co.* v. *Gilbert,* 429 U. S. 125, 141–142 (1976). The EEOC has, however, been given "authority from time to time to issue . . . suitable *procedural* regulations to carry out the provisions of" Title VII, 42 U. S. C. §2000e–12(a) (emphasis added). The regulation at issue here, which permits relation back of amendments to charges filed with the EEOC, is clearly such a procedural regulation. See, *e. g.,* Fed. Rule Civ. Proc. 15 (establishing rules for amendments to pleadings and relation back as part of the Federal Rules of Civil Procedure). Thus, as the Court recognizes, see *ante,* at 113–114, the EEOC was exercising authority explicitly delegated to it by Congress when it promulgated this rule.

The regulation was also promulgated pursuant to sufficiently formal procedures. Although the EEOC originally issued the regulation without undergoing formal notice-and-comment procedures, it was repromulgated pursuant to those procedures in 1977. See 42 Fed. Reg. 42022, 42023 (1977); *id.,* at 55388, 55389. We recognized in *United States* v. *Mead Corp.,* 533 U. S. 218 (2001), that although notice-and-comment procedures are not required for *Chevron* deference, notice-and-comment is "significant . . . in pointing to *Chevron* authority," and that an "overwhelming number of our cases applying *Chevron* deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication." 533 U. S., at 230–231. I see no reason why a re-promulgation pursuant to notice-and-comment procedures should be less entitled to deference than an original promulgation pursuant to those procedures. Cf. *Smiley* v. *Citibank (South Dakota), N. A.,* 517 U. S. 735, 741 (1996) (giving deference to "a full-dress regulation . . . adopted pursuant to the notice-and-comment procedures of the Administrative Procedure Act designed to assure . . . deliberation" even though the regulation was prompted by litigation).

Moreover, the regulation is codified in the Code of Federal Regulations, 29 CFR §1601.12(b) (1997), and so is binding

on all the parties coming before the EEOC, as well as on the EEOC itself. In this regard, it is distinguishable from the Customs Service ruling letters at issue in *Mead Corp., supra,* at 233, which we found not to be binding on third parties and to be changeable by the Customs Service merely upon notice, and to which we therefore denied *Chevron* deference. See also *Christensen* v. *Harris County,* 529 U. S. 576, 587 (2000) (denying *Chevron* deference to an agency opinion letter that we suggested lacked "the force of law," but stating that "the framework of deference set forth in *Chevron* does apply to an agency interpretation contained in a regulation").

Because I believe the regulation is entitled to review under *Chevron,* and because the regulation is reasonable, I concur in the judgment.