Earlene THOMPSON, Plaintiff,

v.

**FEDERAL RESERVE BANK OF NEW YORK, Defendant.**

**No. 01 Civ. 11640(DC).**

United States District Court,
S.D. New York.

Jan. 23, 2003.

S. Jean Smith, New York City, for Plaintiff.

Thomas C. Baxter, General Counsel, Federal Reserve Bank of New York by

Rosalie Yee, Shari Leventhal, New York City, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

Before the Court in this Title VII case is the motion of defendant Federal Reserve Bank of New York (the "Bank") for judgment on the pleadings. The Bank contends that the complaint must be dismissed because plaintiff's claims are barred by Title VII's statute of limitations. Although this is a motion for judgment on the pleadings, both sides have relied on matters outside the pleadings and plaintiff has submitted an affidavit (from her lawyer) opposing the motion. Accordingly, pursuant to Fed.R.Civ.P. 12(c), and because both sides have had a reasonable opportunity to submit all "pertinent" material, I treat the motion as a motion for summary judgment. The motion is denied.

█ A prerequisite to the filing of a federal civil action under Title VII is the timely filing of a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir.1999). Where the alleged act of discrimination occurs in a state that has its own anti-discrimination laws and a state agency is empowered to enforce the laws, the charge of discrimination must be filed with the EEOC within 300 days after the date of the alleged unlawful act. 42 U.S.C. § 2000e–5(e); *see also* 42 U.S.C. § 12117 (ADA incorporating Title VII). The 300-day period starts to run when the claimant receives notice of the allegedly discriminatory act, not when the allegedly discriminatory decision takes effect. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101

S.Ct. 498, 66 L.Ed.2d 431 (1980); *DeSalvo v. Metro. Opera Ass'n Inc.*, No. 96 Civ. 8292(DC), 1997 WL 337517, at *2 (S.D.N.Y. June 19, 1997); *see also Miller v. IT & T Corp.*, 755 F.2d 20, 23 (2d Cir.1985) (limitations period begins to run "on the date when the employee receives a definite notice of the termination"), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985).

Here, as plaintiff concedes, she was notified on or about August 4, 1999, that "her position was being 'downsized' and that she would be terminated as of October 4, 1999." (Smith Aff. ¶ 3 & Ex. 2). Indeed, on or about August 4, 1999, plaintiff received a letter from the Bank's Human Resources representative confirming as follows:

> As per our conversation of yesterday, I am attaching a folder which contains information concerning your benefits in conjunction with your *separation* from this Bank effective October 4, 1999. . . .

(Smith Aff., Ex. 2) (emphasis added). Hence, plaintiff learned on August 4, 1999 (or even the day before) that her position was being "downsized." She therefore had 300 days—until June 29, 2000—in which to file an EEOC charge. Plaintiff did not, however, formally file an EEOC charge until October 27, 2000, well after the 300-day period had expired. On November 7, 2000, the EEOC rejected the claim on the basis that "it was not filed within the time limit required by law" and issued plaintiff a notice of her right to sue. (Def.Mem., Ex. C).[1]

In opposing the motion, plaintiff essentially makes two points. First, she contends that she was deceived by the Bank into believing that the termination of her

---

1. Plaintiff filed her *pro se* complaint within 90 days of receipt of the right to sue letter. Although her EEOC charge had alleged discrimination based on race and disability and retaliation, her complaint in this action asserts only a race claim. Plaintiff is now represented by counsel.

employment had been rescinded and that the 300–day period did not start to run until later. Second, although she concedes that her "official" EEOC charge was not signed until October 27, 2000, she argues that she first contacted the EEOC in June 2000 and was in communication with the EEOC before the 300–day period expired. The first argument is rejected, but the second argument has merit.

■ First, plaintiff contends that she was deceived by the October 1, 1999 letter into believing that the termination of her employment had been rescinded and that she therefore had no notice of the discriminatory conduct against her until December 1999, when she was declared medically fit to return to work but the Bank had no position for her. No reasonable fact finder, however, could conclude that plaintiff was deceived. The letter reads in part as follows:

> This letter confirms that you have elected to remain on medical leave beyond Monday, October 4, 1999, your originally scheduled termination date.

> As explained to you previously, in the event that you are medically certified as fit to return to work at some point in the future, you *will not* be eligible to receive the separation benefits which were outlined in your Release of Claims Agreement. Rather, in accordance with Bank policy, we would attempt to find an available and suitable position for you in the Bank. However, if such a position does not exist, the Bank would terminate your employment, at which time you may be eligible to receive limited separation benefits.

> If you have chosen instead to terminate your employment with the Bank in order to receive the separation package outlined in your Release of Claims Agreement, *you must contact me no later than 5:00 p.m., Tuesday, October 12, 1999.*

(Smith Aff., Ex. 3) (emphasis in original).

The October 1, 1999 letter and the August 4, 1999 letter together make clear that the downsizing of plaintiff's position was *not* being rescinded. Rather, plaintiff was downsized when she was out on medical leave, with the termination of her employment to take effect on October 4, 1999. When the time came, however, she elected to remain on medical leave beyond the October 4, 1999 termination date. As a consequence, she continued to receive medical benefits but she was not eligible for the separation package outlined in the Release of Claims Agreement. She was also advised that, "in accordance with Bank policy," if she were medically certified fit to return to work in the future, the Bank would try to find her a job but if no suitable position were available, her employment would be terminated then.

Although the October 1, 1999 letter alluded to the fact that plaintiff's employment was not formally terminated at that time, that was only because plaintiff chose to remain on medical leave. The allegedly discriminatory action was the Bank's decision to *downsize* plaintiff, and the October 1, 1999 letter made clear—and a reasonable fact finder could only find—that the decision to downsize stood. Plaintiff could not have reasonably believed that that decision was rescinded. Hence, the 300–day period started to run on August 4, 1999, and not when plaintiff was medically fit to return to work.

■ Second, however, the record demonstrates that plaintiff submitted a statement, under penalty of perjury, to the EEOC setting forth the details of her claim within the 300–day period. Although plaintiff did not submit a charge of discrimination on the correct EEOC form until October 27, 2000, she filled out a

questionnaire at the EEOC on June 14, 2000. The two-page questionnaire was signed by plaintiff under penalty of perjury and laid out what plaintiff believed to be the discriminatory action against her. (Pl. Mem., Ex. 4). Certainly, then, plaintiff complied with the requirements that a "writing, under oath or affirmation ... contain[ing] such information ... as the [EEOC] requires" be filed within 300 days. 42 U.S.C. §§ 2000e–5(b), (e).

The Bank points out that on June 14, 2000, when plaintiff submitted her first questionnaire, the EEOC specifically advised her that:

> at this time, you have not filed a charge of discrimination. In order for the EEOC to have jurisdiction to investigate any complaint, and to protect your legal rights, a charge of discrimination *must usually be filed within 300 calendar days of the alleged violation.* It is your responsibility to insure that your charge of discrimination is filed in a timely manner.

(Def.Reply.Mem., Ex. A) (emphasis added). Hence, the Bank argues, even after plaintiff submitted a questionnaire, she was told by the EEOC that it was her responsibility to file a charge of discrimination within the 300–day period.

The Bank's argument, however, is foreclosed by the Supreme Court's decision in *Edelman v. Lynchburg College,* 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002), and the EEOC's regulation that permits amendments to EEOC charges that "relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b). In *Edelman,* a case remarkably similar to this one, within the 300–day limitations period, the claimant faxed a letter to the EEOC complaining of discrimination against him by his employer. The EEOC reminded the claimant that "a charge of discrimination must be filed within the time limits imposed by law."

122 S.Ct. at 1147 (quoting EEOC's letter to claimant). Notwithstanding that warning, the claimant did not submit a formal charge of discrimination until 13 days after the 300–day period had expired.

After receiving a right-to-sue letter, the complainant sued. The district court dismissed the Title VII claims and the Fourth Circuit affirmed. The Supreme Court, however, reversed, holding that under the EEOC's regulation, the late-filed charge could be deemed to relate back to the timely-filed letter. The Supreme Court remanded for consideration of whether the letter should be considered a charge.

In this case, I conclude that the timely-filed questionnaire, which was signed by plaintiff under declaration of perjury, constituted a charge of discrimination as required by Title VII. *See Gharzouzi v. Northwestern Human Services of Pa.,* 225 F.Supp.2d 514, 521–22 (E.D.Pa.2002) (following *Edelman* ). I hold further that to the extent there were any defects in the form of the questionnaire (which was an EEOC form), those defects were cured by the formal charge filed on October 27, 2000, which related back to the date the first questionnaire was received.

Accordingly, defendant's motion is denied. Counsel for the parties shall appear for a pretrial conference on February 7, 2003, at 11:00 a.m.

SO ORDERED.