**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 05-2362**

_____

NEW WEST MATERIALS LLC; JWR, INCORPORATED,

Plaintiffs - Appellants,

and

CALMAT COMPANY, d/b/a Vulcan Materials
Company,

Plaintiff,

versus

INTERIOR BOARD OF LAND APPEALS; BUREAU OF LAND
MANAGEMENT,

Defendants - Appellees.

--------------------

NATIONAL STONE, SAND & GRAVEL ASSOCIATION,

Amicus Supporting Appellants.

_____

Appeal from the United States District Court for the Eastern
District of Virginia, at Alexandria. T. S. Ellis, III, District
Judge. (CA-05-403-TSE-BRP)

_____

Argued: November 29, 2006         Decided: February 8, 2007

_____

Before WILKINSON and DUNCAN, Circuit Judges, and Joseph R. GOODWIN,
United States District Judge for the Southern District of West
Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** R. Timothy McCrum, CROWELL & MORING, L.L.P., Washington, D.C., for Appellants. Elizabeth Ann Peterson, UNITED STATES DEPARTMENT OF JUSTICE, Environment & Natural Resources Division, Washington, D.C., for Appellees. **ON BRIEF:** Clifton S. Elgarten, Daniel W. Wolff, CROWELL & MORING, L.L.P., Washington, D.C., for Appellant New West Materials, L.L.C.; Thomas P. Mains, Jr., Great Falls, Virginia, Jerry L. Haggard, Phoenix, Arizona, for Appellant JWR, Incorporated. Barbara B. Fugate, UNITED STATES DEPARTMENT OF THE INTERIOR, Office of the Solicitor, Washington, D.C.; Richard R. Greenfield, UNITED STATES DEPARTMENT OF THE INTERIOR, Office of the Solicitor, Phoenix, Arizona; Sue Ellen Wooldridge, Assistant Attorney General, William B. Lazarus, Gregory D. Page, UNITED STATES DEPARTMENT OF JUSTICE, Environment & Natural Resources Division, Washington, D.C., for Appellees. Christopher G. Hayes, Kathleen S. Corr, BJORK, LINDLEY & LITTLE, P.C., Denver, Colorado, for National Stone, Sand & Gravel Association, Amicus Supporting Appellants.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The central issue in this appeal is the meaning and scope of a mineral reservation in a patent granted under the Small Tract Act ("STA"). 43 U.S.C. § 682a (1970).[*] Specifically, the question before us is whether sand and gravel are included in the reservation of "the oil, gas and all other mineral deposits" contained in a land patent issued pursuant to the STA. The Bureau of Land Management ("BLM") concluded that sand and gravel fall within this mineral reservation and issued appellants, New West Materials ("New West"), a notice of trespass. Appellants appealed the BLM's notice to the Interior Board of Land Appeals ("IBLA"), which affirmed the BLM's trespass determination. New West and JWR Inc. then initiated this suit in federal court, seeking review of the IBLA's final administrative decision. After considering cross-motions for summary judgment, the district court affirmed the IBLA. New West Materials, LLC v. IBLA, 398 F. Supp. 2d 438 (E.D. Va. 2005). For the following reasons, we affirm.

I.

The district court opinion provides a detailed recitation of the facts and background in this case. A short summary of the facts will, therefore, suffice here. The Small Tract Act of 1938

---

[*]Small Tract Act of 1938, Ch. 317, 52 Stat. 609, amended by Ch. 270, 68 Stat. 239 (1954), repealed by Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579, § 702, 90 Stat. 2789.

-3-

authorized the Secretary of the Interior to sell or to lease small, isolated five acre tracts of public lands to be used for "home, cabin, camp, health, convalescent, recreational, or business site" purposes. 52 Stat. 609 (1938). In addition, the STA required the patents under which land was sold to contain a reservation to the United States of the "oil, gas, and other mineral deposits, together with the right to prospect for, mine, and remove the same under such regulations as the Secretary may prescribe." Id.

This case involves an eighty-two acre tract of land located approximately twenty miles outside of downtown Phoenix, Arizona. In 1959, the BLM, an agency of the United States Department of the Interior ("DOI"), conveyed the land via patent deeds pursuant to the STA to several private owners in separate parcels approximately five acres in size.

Shortly after acquiring the subject-land in August of 2000, appellant JWR, Inc. ("JWR") leased the land to co-appellant New West for the express purpose of New West's extraction of sand and gravel from the land. In 2001, the BLM discovered that New West was actively mining sand and gravel on the land.

On November 1, 2001, the BLM claimed ownership of the sand and gravel found on the land. The BLM asserted that New West was not authorized to remove the sand and gravel without the approval of the DOI. On January 3, 2002, the BLM served New West with a notice of trespass stating that New West had "committed an act of

nonwillful trespass by removing and selling mineral material without a valid contract" in violation of 43 C.F.R. § 9239.0-7.

New West and JWR appealed the notice of trespass to the IBLA pursuant to 43 C.F.R. § 4.411. On December 2, 2004, the IBLA upheld the BLM's trespass determination in a written decision in New West Materials, 164 IBLA 126 (2004). After the IBLA denied New West's motion for reconsideration, appellants sought judicial review of the Board's decision pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, in the District Court for the Eastern District of Virginia.

In the district court, appellants sought 1) a declaration that the United States, acting through the BLM, had no ownership interest in the sand and gravel of the subject lands, and 2) an injunction enjoining the BLM from asserting a claim of trespass and resulting damages against New West and JWR. Because the material facts in the case were essentially undisputed, the parties filed cross-motions for summary judgment. The district court granted the government's motion for summary judgment and denied New West's motion. See New West Materials, LLC v. Interior Bd. of Land Appeals, 398 F. Supp. 2d 438 (E.D. Va. 2005).

The district court determined that because Congress had conferred upon the DOI the authority to implement the STA, the IBLA's interpretation of the STA was entitled to deference and must be upheld if it was reasonable. Ultimately, the court found that

-5-

the IBLA's interpretation was "based on a permissible construction of the statute." Id. at 453 (citing Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc., 467 U.S. 837, 843 (1984)). The court concluded that sand and gravel are minerals pursuant to the STA reservation. This appeal followed.

## II.

We review the district court's grant of summary judgment de novo. Francis v. Booz, Allen & Hamilton, 452 F.3d 299, 302 (4th Cir. 2006). Although we view the evidence in the light most favorable to the nonmoving party, we review any conclusions of law de novo. Blaustein & Reich, Inc. v. Buckles, 365 F.3d 281, 286 (4th Cir. 2004). In particular, we review questions of statutory interpretation de novo. United States v. Abuagla, 336 F.3d 277, 278 (4th Cir. 2003).

New West contends that the district court erred in affording deference to the IBLA's decision. Because we base our decision on our own interpretation of the statute, there is "no occasion to defer and no point in asking what kind of deference, or how much" we should grant in this case. Edelman v. Lynchburg Coll., 535 U.S. 106, 114 (2002). Therefore, we do not reach the question of whether the IBLA's decision is owed deference.

III.

In interpreting a federal statute, we begin by examining its plain language. Reid v. Angelone, 369 F.3d 363, 367 (4th Cir. 2004). We must give the relevant terms their "common and ordinary meaning." Id. If the language is unambiguous, that is the beginning and end of our inquiry. BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (citing Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004)). Here, we agree with the district court that the word mineral is ambiguous, as it is "used in so many senses, dependent upon the context." New West, 398 F. Supp. 2d at 445 (quoting Watt v. Western Nuclear, Inc., 462 U.S. 36, 42 (1983)). The term is so broad that it could encompass virtually all of any conveyance of land. Western Nuclear, 462 U.S. at 43.

The Supreme Court has twice considered whether materials such as sand and gravel are reserved minerals under other federal statutes administered by the DOI. See BedRoc, 541 U.S. at 184-86; Western Nuclear, 462 U.S. at 43. In Western Nuclear, the Court interpreted a reservation of "all the coal and other minerals" contained in the Stock-Raising Homestead Act of 1916 ("SRHA"). Western Nuclear, 462 U.S. at 60. The Court held that gravel was a reserved mineral pursuant to the SRHA. Id.

In BedRoc, the Court distinguished Western Nuclear without overruling it. The statute at issue in BedRoc, the Pittman Underground Water Act of 1919 ("Pittman Act"), reserved "all the

-7-

coal and other valuable minerals" to the United States. <u>BedRoc</u>, 541 U.S. at 185. The Court refused to extend the rationale of <u>Western Nuclear</u> to the Pittman Act because the Court found that the Act's plain meaning would not support it. <u>Id.</u> at 186. The Court relied on Congress's addition of the modifier "valuable," which was absent in the SRHA, in holding that sand and gravel were not "valuable minerals" reserved by the Pittman Act. <u>Id.</u>

In these cases, the Supreme Court considered 1) the plain meaning of the reservation at issue, 2) the contemporary legal sources' understanding of the meaning of the word mineral, and 3) the purpose of the mineral reservation in question. Using the analysis applied by the Supreme Court in both <u>BedRoc</u> and <u>Western Nuclear</u> and the analysis that the district court correctly applied in this case, we find that the term mineral, as used in the STA, encompasses sand and gravel.


A.

We look first to the plain language of the STA. The plain language of the STA is instructive as to the intended reach of its mineral reservation. In the 1954 STA amendments, Congress clarified the scope of the Act's mineral reservation by including the modifier "all." As amended, the relevant portion of section 2 of the STA reserved to the United States "the oil, gas, and *all* other mineral deposits." 43 U.S.C. § 682a, 68 Stat. 239 (1954) (emphasis

added). In rewriting the language of the STA, Congress reduced any ambiguity on the question of what mineral deposits might be included under the reservation. We follow the "canon of statutory interpretation [which] requires us to presume that the legislature says in a statute what it means and means what it says." BedRoc, 541 U.S. at 183 (quoting Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992)). Applying this canon, we agree with the district court that the plain meaning of the amendment is clear: "Congress intended the STA's mineral reservation to be given the broadest interpretation possible." New West, 398 F. Supp. 2d at 446.

Previous Supreme Court opinions provide guidance in our interpretation of the term mineral. In Western Nuclear, the Court held that gravel was a reserved mineral pursuant to the SRHA, while in BedRoc, the Court held that sand and gravel were not "valuable minerals" reserved to the United States pursuant to the Pittman Act. BedRoc, 541 U.S. at 186; Western Nuclear, 462 U.S. at 60.

The BedRoc plurality distinguished the Pittman Act from the SRHA by emphasizing the addition of the modifier "valuable" in the Pittman Act's reservation. Id. at 184-86. The Pittman Act reserved "all the coal and other valuable minerals." Id. at 179. The Court reasoned that the Pittman Act's reservation of "valuable minerals" required a narrower interpretation than the reservation of "all the coal and other minerals" found in the SRHA. BedRoc, 541 U.S. at 183-84.

The mineral reservation in the amended STA of "oil, gas, and all other mineral deposits" and the reservation in section 9 of the SRHA of "all the coal and other minerals" are strikingly similar. The Supreme Court interpreted the SRHA's reservation to include gravel. Western Nuclear, 462 U.S. at 60. Accordingly, the district court in this case reasoned that because the modifier "valuable" was necessary to distinguish the Pittman Act's reservation from that of the SRHA, "the absence of the term valuable in the STA's mineral reservation compels the conclusion that the Western Nuclear holding is persuasive, if not, controlling." New West, 398 F. Supp. 2d at 446. We agree. In employing the Court's same plain language approach to this case, we find that the plain meaning of the STA's reservation commands the most expansive interpretation available under existing law.

B.

The excellent and thorough opinion of the district court also considered the contemporary legal sources' understanding of the term mineral at the time of the STA's passage. New West, 398 F. Supp. 2d at 447-48; see also BedRoc, 541 U.S. at 184 ("[T]he proper inquiry focuses on the ordinary meaning of the reservation at the time Congress enacted it."). The district court noted that contemporaneous judicial decisions, opinions of the Secretary of the Interior, and IBLA decisions bolstered the idea that the STA's

mineral reservation included sand and gravel. We agree with the district court's determination that those decisions further support the conclusion that minerals under the STA were intended to include sand and gravel. See Dredge Corp. v. Penny, Civ. No. 475 (D. Nev. 1964) (holding that minerals including sand and gravel found on STA lands were not subject to prospecting until the DOI issued appropriate rules and regulations), affirmed by Dredge Corp. v. Penny, 362 F.2d 889 (9th Cir. 1966); Layman v. Ellis, 52 L.D. 714, 718 (1929) (citing publications "wherein sand and gravel [had] uniformly been classed as a mineral resource").

The district court found further support for its conclusion in the Materials Act of 1947. New West, 398 F. Supp 2d at 448-49. The Materials Act gave the DOI the authority to dispose of minerals, specifically including sand and gravel, and Congress passed this act eight years after the STA was originally passed and seven years before the STA was amended to expand the mineral reservation to "all other mineral deposits." See Materials Act of 1947, 30 U.S.C. § 601. Because the Materials Act passed contemporaneously with the STA and its amendments expressly granted the DOI authority to dispose of "mineral materials" such as sand and gravel, we believe that this Act adds further support to the holding that the mineral reservation in the STA includes sand and gravel.

C.

In considering the purpose of the STA's mineral reservation, we find the Supreme Court's analysis of the SRHA helpful. The Court found that the primary congressional purpose in reserving the mineral estate under the SRHA was to promote "concurrent development of both surface and subsurface resources." Western Nuclear, 462 U.S. at 50. The Western Nuclear Court concluded that "the determination of whether a particular substance is included in the surface estate or the mineral estate should be made in light of the use of the surface estate that Congress contemplated." Id. at 52. In the Court's view, inclusion of gravel in the surface estate in SRHA lands would lead to the illogical result of making subsurface development of gravel resources dependent on "the initiative of persons whose interests were known to lie elsewhere." Id. at 56.

We find Western Nuclear's reasoning applicable to STA lands. As the district court explained: "Just as Congress should not have expected the ranchers and farmers who received grants pursuant to the SRHA to exploit the subsurface estate, Congress likewise could not have expected the homeowners or small business owners of five acre plots to exploit the subsurface estate." New West, 398 F. Supp. 2d at 449. Congress specified the types of small surface estates permitted by the STA. These estates included residential homes, small businesses, recreational sites, and health centers. 43

-12-

U.S.C. § 682a. We cannot infer from any of these intended uses the possibility that individual owners were permitted to exploit the minerals underlying their land. This is not to say that some incidental disruption to the sand and gravel of an estate in order to build a home, for example, would justify a trespass claim. It is wholly another matter, however, to sell or lease a group of small limited purpose parcels of land for full-scale commercial mining.

## IV.

The Supreme Court's prior decisions guide our interpretation of the STA. After following the Court's analysis by considering the language of the statute, the contemporaneous legal sources, and the congressional purpose of the STA's mineral reservation, we hold that the STA's reservation of the "oil, gas and all other mineral deposits" encompasses sand and gravel deposits.

<u>AFFIRMED</u>