Leonora CHRISTALDI–SMITH Plaintiff,

v.

**JDJ, INC. and U.C.C. Total Home, Inc. Defendants.**

No. Civ.A.04–4435.

United States District Court, E.D. Pennsylvania.

April 26, 2005.

Hans Edward Solum, Jr., Ridley Park, PA, for Plaintiff.

Louis R. Lessig, Brown & Connery, LLP, Westmont, NJ, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I.  BACKGROUND

On June 1, 1998 plaintiff, Leonora Christaldi–Smith, commenced employment with defendant JDJ, Inc. ("JDJ"), a wholesale buyers club operating under a franchise issued by its franchisor, defendant U.C.C. Total Home, Inc. ("U.C.C. Total Home"). Plaintiff purportedly was hired as a director responsible for soliciting by mail and by telephone potential members who would pay a fee to join the club.  Plaintiff avers that at all times the function and procedures of JDJ were monitored and controlled by U.C.C. Total Home.

In December 2002, plaintiff informed David Jennings, President and 50% shareholder of JDJ, that she was pregnant. According to plaintiff, thereafter Mr. Jennings had a meeting on January 27, 2003 with Patricia Smith, owner of a U.C.C. Total Home franchise in Cherry Hill, New Jersey, and told her that plaintiff was to be terminated the following day.  Plaintiff alleges that the following day service on her company cell phone and her health insurance coverage, to which she had paid premiums, were cancelled.  Plaintiff also alleges that Mr. Jennings had a meeting with the staff of JDJ on January 28, 2003 and officially informed them that plaintiff was no longer employed by the company.

JDJ admits that plaintiff told Mr. Jennings of her pregnancy in late 2002, but denies plaintiff's other allegations concerning her termination.  According to JDJ, on January 28, 2003, plaintiff informed Mr. Jennings that she was engaged and that she would be leaving JDJ on February 1, 2003 to relocate to New Jersey.  Mr. Jennings purports that he expected plaintiff to finish out the week but that she never returned to work after January 28, 2003 and never contacted anyone at JDJ to explain her absence.  It is JDJ's position that due to plaintiff's failure to contact JDJ regarding her absences and in light of her oral notice of resignation, plaintiff abandoned her job.

Following dissolution of her employment with JDJ, plaintiff sent a handwritten letter to the Equal Employment Opportunity Commission ("EEOC"), which was received and time-stamped on August 11, 2003.  Listed in the heading of the letter was the address of the local EEOC office. Immediately below the EEOC's address was the following subject line:

Re: Employment Discrimination

Previous Employer *5 yrs*

UCC Total Home

D/B/A Direct Buy

President J. David Jennings

102 Chelsea Parkway

Boothwyn, PA 19061

The body of the letter detailed allegations made by plaintiff concerning her former employment. Specifically, plaintiff alleged that while Mr. Jennings told her to go work for "the UCC/Direct Buy in Cherry Hill," he in fact called the home office to prevent plaintiff from working at "UCC anywhere" for six months. Plaintiff also alleged that Mr. Jennings took away a trip to Bermuda that she had earned and cancelled her health insurance retroactively. Plaintiff attributed Mr. Jennings actions to his alleged dislike for plaintiff's husband, who was in the same business and who Mr. Jennings' allegedly accused of stealing plaintiff away. The letter also stated: "But the fact remains he fired me shortly after I informed him I was expecting."

The EEOC acknowledged receipt of plaintiff's correspondence with a letter to plaintiff, dated September 8, 2003, that was accompanied by a set of questionnaires. The EEOC's September 8, 2003 letter notified plaintiff that she must submit the completed questionnaires within thirty-three (33) days of the date of the EEOC's letter or the EEOC would take no further action. Thereafter, plaintiff submitted the questionnaires to the EEOC.

The EEOC acknowledged receipt of the completed questionnaires in a letter to plaintiff, dated October 21, 2003, which alerted plaintiff that her correspondence would be assigned to an EEOC representative for completion of the intake processing and that she would be informed of a decision in the matter. The EEOC further stated that if it determines that plaintiff's charge is eligible for docketing, the EEOC would prepare a draft charge on an EEOC Charge Form and send that form to plaintiff for plaintiff's approval and signature. The EEOC's October 21, 2003 informed plaintiff that once a signed Charge Form was received, her charge would be docketed. However, the EEOC cautioned that "because of the volume of correspondence received by this office, there may be delay before you are contacted." (Defs. Reply Br., Ex. H.)

On November 27, 2003, 303 days after plaintiff's alleged unlawful termination, plaintiff signed an EEOC Charge Form claiming discrimination in violation of Title VII of the Civil Rights Act of 1964. This EEOC charge was cross-filed with the Pennsylvania Human Relations Commission ("PHRC"). The November 27, 2003 charge included the same factual allegations made in plaintiff's August 11, 2003 letter to the EEOC. It also included a paragraph specifically alleging a violation of Title VII of the Civil Rights Act of 1964 for the termination of plaintiff's employment and health insurance following disclosure of her pregnancy. Listed as the employer on the November 27, 2003 charge was JDJ Inc. with the address of "D/B/A UCC Total Home, 102 Chelsea Parkway, Boothwyn, PA 19061."

On June 25, 2004, plaintiff received a "Right to Sue" letter from the EEOC. Plaintiff then commenced the instant action on September 20, 2004 against defendants, JDJ and U.C.C. Total Home, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2 et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Specifically, plaintiff's complaint asserts the following claims:

- *Count I:* A Title VII pregnancy discrimination claim against JDJ;
- *Count II:* A Title VII pregnancy discrimination claim against U.C.C. Total Home;
- *Count III:* A Title VII sex discrimination claim against JDJ;
- *Count IV:* A Title VII sex discrimination claim against U.C.C. Total Home;

- *Count V:* A PHRA pregnancy discrimination claim against JDJ and U.C.C. Total Home; and

- *Count VI:* A PHRA sex discrimination claim against JDJ and U.C.C. Total Home.

Presently before the Court is the defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In their papers, defendants argue: (1) Counts I and III must be dismissed because defendant JDJ is not a covered employee under Title VII; (2) Counts II and IV must be dismissed because defendant U.C.C. Total Home is not a proper party in this litigation; (3) Counts V and VI must be dismissed because plaintiff did not comply with the requirements of the PHRA; (4) Counts V and VI must be dismissed because defendant U.C.C. Total Home is not a proper party under the PHRA; (5) Counts V and VI must be dismissed because plaintiff abandoned her job; and (6) all claims in plaintiff's complaint asserted under the FMLA must be dismissed because defendants JDJ and U.C.C. Total Home are not proper parties under the FMLA.

Plaintiff concedes that Counts V and VI must be dismissed for failure to comply with the requirements of the PHRA. Plaintiff also concedes that all FMLA claims must be dismissed because neither JDJ or U.C.C. Total Home qualify as an "employer" under the FMLA. Given these concessions, the remaining arguments are that: (1) Counts I and III must be dismissed because defendant JDJ is not a covered employee under Title VII and (2) Counts II and IV must be dismissed because defendant U.C.C. Total Home is not a proper party in this litigation. The Court held a hearing on April 7, 2005 to consider both of these arguments. For the reasons that follow, the defendants' motion to dismiss is granted as to Counts II, IV, V and VI and to any claims under the Family Medical Leave Act and denied as to Counts I and III.

## II. DISCUSSION

### A. *Standard of Review for a Motion to Dismiss for Failure to State a Claim*

A motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) serves to test the sufficiency of a complaint. *See Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). Therefore, the court must accept as true all factual allegations made in the complaint and all reasonable inferences that can be drawn therefrom. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988). Notably, the Court is permitted to "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). The motion should be granted "only if, accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir.1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

### B. *Defendant's Arguments*

#### 1. *Statute of limitations.*

█ Before addressing the arguments raised in the defendants' papers, it is necessary to address the issue of the timeliness of plaintiff's EEOC charge. Notably,

the defendants raised this issue for the first time at oral argument as a basis for dismissing Counts I and III in which JDJ is named. Since the plaintiff was not afforded an opportunity to submit a written response to this argument, the Court may deem the issue waived with respect to those counts. However, the Court need not resolve the issue on procedural grounds because on the merits it concludes that plaintiff's EEOC charge was timely filed.

Pursuant to 42 U.S.C. § 2000e–5(e)(1), an individual must file a charge within 180 days of the alleged unlawful employment practice unless the complainant "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice," in which case the charge must be filed within 300 days. 42 U.S.C. § 2000e–5(e)(1). Although a strict reading of this provision would permit the 120–day extension for filing an EEOC charge only where a complainant initiated a complaint with a parallel state agency first, the Third Circuit Court of Appeals has construed this provision as allowing the extension where, as in this case, the state agency complaint is filed simultaneously with the EEOC charge. *Seredinski v. Clifton Precision Prods. Co.,* 776 F.2d 56, 61 (3d Cir.1985).

In *Seredinski,* the Third Circuit held that where an action is brought in a "deferral state," *i.e.,* a state such as Pennsylvania which prohibits the employment practice alleged and authorizes the state to grant relief, a charge must be filed with the EEOC within 300 days of when the alleged unlawful employment practice occurred. *Id.* However, the court in *Seredinski* highlighted an important proviso found in 42 U.S.C. § 2000e–5(c): "no charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the state or local law, unless such proceedings have been earlier terminated." *Id.* (quoting 42 U.S.C. § 2000e–5(c)). Thus, the net result of reading § 2000e–5(e)(1) and § 2000e–5(c) *in pari materia* "is that where state proceedings are commenced by the EEOC sending notice to the state agency upon its receipt of a Title VII charge, ... the 300–day limitation period is effectively cut to 240 days, because the Title VII charge—though it has been received by [the] EEOC—may not be deemed 'filed' until sixty days later." *Id.* (citing *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980)).

Here, the defendants argue that plaintiff first filed an EEOC charge on November 27, 2003, 303 days after plaintiff's alleged unlawful termination on January 28, 2003. However, plaintiff sent a letter to the EEOC, which the EEOC received on August 11, 2003, voicing the same complaints as those raised in her November 27, 2003 filing. The letter was received by the EEOC 195 days after the alleged unlawful employment practice, well before the statute of limitations expired. Thus, the issue is whether the August 11, 2003 letter constitutes a charge sufficient to satisfy the requirements of 42 U.S.C. § 2000e–5(e)(1).

For a communication to the EEOC to constitute a charge it must (1) "be in writing under oath or affirmation," and (2) must "contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). Here, the August 11, 2003 letter was not notarized or otherwise in compliance with the verification requirement. However, as to the first requirement, the Supreme Court has construed section 2000e–5(b) to permit relation back of an oath, omitted from the original filing, by the filing of a verification before the employer is obliged to respond to the charge. *See Edelman v. Lynchburg College,* 535 U.S. 106, 113, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002).

In *Edelman,* the Supreme Court was confronted with a circumstance in which a Title VII complainant faxed an unverified letter to an EEOC field office claiming gender-based employment discrimination prior to expiration of the 300–day limitations period but did not submit a verified charge until after the limitations period. *Id.* at 109, 122 S.Ct. 1145. Upon a motion to dismiss, the district court dismissed the case finding that the unverified letter was not a "charge." *Id.* at 110, 122 S.Ct. 1145. The Court of Appeals for the Fourth Circuit affirmed. *Id.* The Supreme Court reversed finding that an oath or affirmation of a charge is only required "by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC." *Id.* at 113, 122 S.Ct. 1145.

In reaching its conclusion, the Supreme Court reconciled the verification provision of the statute requiring a charge "to be in writing under oath or affirmation," 42 U.S.C. § 2000e–5(b), and the timing provision requiring a charge to be filed within 300 days after the alleged unlawful employment practice, § 2000e–5(e)(1). While noting that "reading the two provisions together would not be facially inconsistent," the Court explained that "doing that would ignore the two quite different objectives of the timing and verification requirements." *Id.* at 112, 122 S.Ct. 1145. The purpose of the timing requirement, the Court explained, "is to encourage a potential charging party to raise a discrimination claim before it gets stale, for the sake of a reliable result and a speedy end to any illegal practice that proves out." *Id.* at 112–13, 122 S.Ct. 1145. The verification requirement on the other hand, "has the different object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." *Id.* at 113, 122 S.Ct. 1145. It is meant to ensure against "catchpenny claims of disgruntled, but not necessarily aggrieved, employees." *Id.* at 115, 122 S.Ct. 1145. It is not meant to alter Title VII's " 'remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.' " *Id.* (quoting *EEOC v. Commercial Office Products Co.,* 486 U.S. 107, 124, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988)). Thus, in light of these differing objectives, the Court construed the verification requirement of § 2000e–5(b) to allow the relation back of an oath or affirmation to the original filing. *Id.* Under *Edelman,* therefore, plaintiff's August 11, 2003 letter satisfies the verification requirement of 42 U.S.C. § 2000e–5(b) through the relation back of the affirmation in plaintiff's November 27, 2003 filing containing the same allegations of discrimination.

Next the Court must determine whether the August 11, 2003 letter satisfies the second requirement of 42 U.S.C. § 2000e–5(b) that the writing "contain such information and be in such form as the Commission requires." The EEOC regulations require only that the person making the charge produce "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). Plaintiff's August 11, 2003 letter comports with the EEOC's minimal requirements. It identifies Mr. Jennings, President of JDJ, as her employer and alleges the same discriminatory acts which were alleged in her formal charge filed on November 27, 2003 and in her civil action complaint. Significantly, the August 11, 2003 letter is sufficiently detailed so as to enable the EEOC "to investigate immediately [the allegations of discrimination instead of] await[ing] further communication from the plaintiff before investigation." *Michelson v. Exxon Research and Engineering Co.,* 808 F.2d 1005, 1010 (3d Cir. 1987) (quoting *Bihler v. Singer Co.,* 710 F.2d 96, 100 (3d Cir.1983)). Therefore, the

Court finds that plaintiff's August 11, 2003 letter satisfies both requirements of § 2000e–5(b) and thus constitutes a charge for purposes of tolling the statute of limitations.

### 2. Covered employees under Title VII.

Defendant JDJ moves to dismiss Counts I and III on the basis that it is not an "employer" covered under Title VII. Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . ." 42 U.S.C. § 2000e(b). "[T]he ultimate touchstone under § 2000e(b) is whether an employer has employment relationships with 15 or more individuals for each working day in 20 or more weeks during the year in question." Walters v. Metro. Educ. Enter., Inc., 519 U.S. 202, 212, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997). To determine whether an employer has an employment relationship with a given individual, the test to be employed is what is known as the "payroll method." Id. at 206, 117 S.Ct. 660. This method is preferred because "the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." Id. at 206, 117 S.Ct. 660.

In support of the defendants' argument that JDJ is not a covered employer, the defendants submitted the affidavit of Cathy Jennings, 50% shareholder of JDJ, certifying that she reviewed the payroll records for 2002 and 2003 and determined that at no time during either of those years did JDJ employ more than thirteen employees during any week. (Defs.' Br. Supp. Dismiss., Ex. C at ¶¶ 9–11.) Further, as part of a subsequent reply brief, JDJ submitted the actual 2002 and 2003 payroll records. While Mrs. Jennings' affidavit and JDJ's submission of payroll records may well be correct, the Court will refrain from deciding the issue of whether JDJ is an employer covered by Title VII in the context of a motion to dismiss. See Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 84 (3d Cir.2003) (holding that a district court should have decided whether a defendant employed more than fifteen people under the summary judgment standard rather than as a motion for judgment on the pleadings), cert. denied, 541 U.S. 959, 124 S.Ct. 1714, 158 L.Ed.2d 400 (2004). The Third Circuit has held that "the fifteen-employee threshold is a substantive element (whether an 'employer' exists) of a Title VII claim and is not jurisdictional," meaning a Court need not decide whether an entity had more than 15 employees before reaching a Title VII action's merits. Id. at 83. Therefore, withholding judgment on this issue until the summary judgment stage allows the plaintiff an opportunity for discovery in order to test the defendants' proofs.

### 3. Proper parties under Title VII.

The defendants move to dismiss Counts II and IV of plaintiff's complaint arguing that defendant U.C.C. Total Home is not a proper party because: (1) U.C.C. Total Home was never named as a party in any EEOC charge within the time for filing such a charge under 42 U.S.C. § 2000e–5(e)(1), and (2) U.C.C. Total Home was not provided with the required notice of any potential claim as required by 42 U.S.C. § 2000e–5(f). In essence, these arguments read together raise the issue of whether, as to U.C.C. Total Home, plaintiff has exhausted her administrative remedies.[1]

With respect to the defendants' first argument, the Court has determined that plaintiff's August 11, 2003 letter naming

---

**1.** The defendants have properly raised this issue under Rule 12(b)(6). The Third Circuit

U.C.C. Total Home constitutes a timely filed charge. Part of the Court's rationale for reaching this conclusion is that the affirmation in plaintiff's November 27, 2003 verified charge, to the extent that it contained the same allegations as those contained in the August 11, 2003 letter, relates back to August 11, 2003, the date plaintiff's letter was received by the EEOC. Notably, however, the November 27, 2003 charge excluded mention of U.C.C. Total Home as plaintiff's employer.[2] Therefore, the affirmation of the November 27, 2003 charge, which did not allege that U.C.C. Total Home was plaintiff's employer, cannot relate back to August 11, 2003 as to U.C.C. Total Home.

This result is also supported on policy grounds. The purpose of applying the relation back doctrine when determining the timeliness of an EEOC charge is to ensure "that the lay complainant, who may not know enough to verify on filing, will not risk forfeiting his rights inadvertently," while enabling the EEOC at the same time to look out "for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." *Edelman*, 535 U.S. at 115, 122 S.Ct. 1145. In view of this purpose, plaintiff's omission of U.C.C. Total Home in her November 27, 2003 charge can only be construed as an affirmative determination that plaintiff did not wish to verify her earlier allegations of discrimination against U.C.C. Total Home made in the August 11, 2003 letter.

With respect to the defendants' second argument, by not listing U.C.C. Total

Home as her employer in any verified EEOC charge, plaintiff failed to satisfy the requirement of 42 U.S.C. § 2000e–5(f)(1) which mandates that a civil action may only be brought against employers that are "named in the charge." This exhaustion requirement serves two purposes:

> First, it puts the employer on notice that a complaint has been lodged against him and gives him the opportunity to take remedial action. Second, it gives the EEOC notice of the alleged violation and an opportunity to fulfill its statutory responsibility of seeking to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion.

*Bihler*, 710 F.2d at 99 (internal citations omitted).

As a result of U.C.C. Total Home not being named in plaintiff's verified EEOC charge, U.C.C. Total Home was not given notice of the charge. In fact, the EEOC's Notice of Charge of Discrimination, dated March 2, 2004, was addressed only to "JDJ, Inc." d/b/a UCC Total Home at JDJ's corporate address and was accompanied only by the November 27, 2003 charge which named only JDJ as plaintiff's employer.

The Third Circuit has recognized an exception to the general rule that a plaintiff may not bring a Title VII action against a party not named in an EEOC charge where (1) the unnamed party received notice of the EEOC complaint and (2) there is a shared commonality of interest with the named and unnamed parties.[3] *Schafer*

held in *Anjelino v. New York Times Co.* that district courts should not characterize a failure to exhaust administrative remedies as a jurisdictional bar and thus should consider such an issue under Rule 12(b)(6), rather than under Rule 12(b)(1). 200 F.3d 73, 87 (3d Cir.1999).

2. Section 1601.12(b) of Title 29 of the Code of Federal Regulations permits a charge to be amended to cure technical defects and therefore the later omission of earlier listed parties is not precluded.

3. This exception only applies to plaintiffs who were not represented by counsel at the time

v. Bd. of Pub. Educ., 903 F.2d 243, 252 (3d Cir.1990). The Third Circuit has construed "received notice" to require a showing that the unnamed party had actual knowledge of the EEOC complaint. See id.; Goodman v. Lukens Steel Co., 777 F.2d 113, 127–28 (3d Cir.1985). Thus, to find that U.C.C. Total Home received notice, the Court must find that U.C.C. Total Home actually knew that a charge with the EEOC had been filed.

Here, plaintiff's civil action complaint does not allege that U.C.C. Total Home or any of its representatives had actual notice of the EEOC charge. Further, despite an opportunity to address this issue at the April 7, 2005 hearing, plaintiff failed to point to any evidence showing that U.C.C. Total Home had actual notice of the EEOC charge.

While it is true that plaintiff asserted in her response to the defendants' motion to dismiss that U.C.C. Total Home was provided with the required notice of an EEOC claim, plaintiff's only support for this assertion is that U.C.C. Total Home was named in her August 11, 2003 letter to the EEOC and that Mr. Jennings and JDJ, as franchisees of U.C.C. Total Home are obligated to communicate the EEOC inquiry to the franchisor. This assertion is unsupported by the evidence. With respect to the August 11, 2003 letter, nothing in the record suggests that U.C.C. Total Home ever received a copy of this letter. To the contrary, the only evidence of administrative notice in this case is the EEOC's Notice of Charge of Discrimination, accompanied by plaintiff's November 27, 2003 charge, which was addressed only to JDJ. With respect to plaintiff's assertion that Mr. Jennings and JDJ were obligated to communicate the EEOC's inquiry to U.C.C. Total Home, no evidence of such an obligation can be found in either the EEOC's Notice of Charge of Discrimination or in JDJ's franchise agreement. In fact, section 6.08 of JDJ's franchise agreement specifically provides that JDJ, as franchisee, is responsible for hiring all of its own employees and is exclusively responsible for the terms of their employment and "solely responsible for all employment decisions ..., including those related to hiring, firing, remuneration, personnel policies, benefits, record keeping, supervision, and discipline, and regardless of whether [the franchisee] received advice from [the franchisor] on these subjects." Consequently, the Court finds that there is no evidence from which the Court can conclude that U.C.C. Total Home had actual knowledge of the EEOC complaint.

Therefore, Counts II and IV will be dismissed as plaintiff failed to exhaust her administrative remedies as to U.C.C. Total Home.

---

that the EEOC complaint was filed. See Cronin v. Martindale Andres & Co., 159 F.Supp.2d 1, 9 (E.D.Pa.2001) (citing Harrington v. Hudson Sheraton Corp., 2 F.Supp.2d 475, 478 (S.D.N.Y.1998); Tarr v. Credit Suisse Asset Mgmt., 958 F.Supp. 785, 794 (E.D.N.Y. 1997); Sharkey v. Lasmo, 906 F.Supp. 949, 955 (S.D.N.Y.1995)). Here, it is unclear whether plaintiff was represented by counsel when she filed her verified EEOC charge. In her August 11, 2003 letter to the EEOC, plaintiff indicated that Danny Elmore, Esq., suggested that she file a complaint with the Commission and that Mr. Elmore has documentation of everything. However, this Court has previously found that "mere suggestion that [a] plaintiff file a complaint is not the type of specific legal advice [contemplated] such that [the plaintiff] can be deemed to have been represented by counsel." Id. at 10. Moreover, there is no evidence here that Mr. Elmore was representing plaintiff at the time she filed her November 27, 2003 EEOC charge. Although the burden is on the plaintiff to show she was not represented by counsel, the Court need not resolve this issue since plaintiff cannot otherwise establish that the commonality of interests exception applies.

### III. CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is granted in part and denied in part. The motion is granted with respect to Counts II, IV, V and VI and to any claims brought under the Family Medical Leave Act. The motion is denied with respect to Counts I and III.

An appropriate Order follows.

### ORDER

**AND NOW**, this 26th day of April 2005, it is hereby **ORDERED** that the defendants' motion for leave to file a Reply (doc. no. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss (doc. no. 7) is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Counts II, IV, V and VI and to any claims brought under the Family Medical Leave Act. The motion is **DENIED** as to Counts I and III.

**AND IT IS SO ORDERED.**