nature of the searches. The Court otherwise denies the motion.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**SUMMER CLASSICS, INC., Defendant.**

No. CIV.A. 09–AR–1926–S.

United States District Court,
N.D. Alabama,
Southern Division.

July 6, 2011.

Opinion Denying Reconsideration
Aug. 3, 2011.

C. Emanuel Smith, Eunice H. Morrow, Julie Bean, Ylda Marisol Kopka, U.S. Equal Employment Opportunity Commission, Birmingham, AL, Gwendolyn Young Reams, James L. Lee, Equal Employment Opportunity Commission, Washington, DC, for Plaintiff.

Brice Martin Johnston, Johnston Law Firm, PC, N Dewayne Pope, Dewayne Pope LLC, Birmingham, AL, for Defendant.

## MEMORANDUM OPINION

WILLIAM M. ACKER, JR., District Judge.

· Because plaintiff, Equal Employment Opportunity Commission ("EEOC"), has timely filed objections to the report and recommendation submitted by the magistrate judge to whom the above-entitled case was originally assigned, the district court is obligated to evaluate the controversy *de novo.* The court has now performed that not inconsiderable task. The court ends in total agreement with the magistrate judge. But, because EEOC so vigorously insists that there is no time bar, suggesting that this case may become a test case involving the unique question presented, the court will SUPPLEMENT the magistrate judge's report and recommendation as follows. Meanwhile, EEOC's objections are OVERRULED, and the report and recommendation ADOPTED.

The adverse employment decision of which EEOC complains occurred on February 23, 2007. The individual who brought the matter to EEOC's attention did so on July 21, 2007. On that date he filed with the EEOC an "Intake Questionnaire", employing the form furnished by EEOC for that purpose. This occurred within 180 days after the act of defendant, Summer Classics, Inc. that allegedly violated the Americans with Disabilities Act. The "Intake Questionnaire" began with the following clear words of warning from EEOC:

Please immediately complete the entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER,** *a charge of employment discrimination* must be filed within the time limits imposed by

law, generally within 180 days or in some places 300 days of the alleged discrimination. Upon receipt, this form will be reviewed to determine EEOC coverage. **Answer all questions as completely as possible, and attached additional pages if needed to complete your responses(s). Incomplete responses may delay further processing of your questionnaire by EEOC. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "n/a."**

(emphasis in original, except that the words "charge of discrimination" are italicized).

The fact that the word "charge" prominently appears in the "Intake Questionnaire" shows that a sharp distinction exists between an "Intake Questionnaire" and a "Charge of Discrimination". The actual "charge" must, as EEOC warns, be filed within 180 days of the act complained of. This 180 days expired on August 21, 2007. A "Charge of Discrimination", using EEOC's Form 5, was not received by EEOC until September 5, 2007. Peculiarly, the record contains no copy of the actual "Charge of Discrimination", although there is no dispute about the fact that the completed Form 5 was not received by EEOC until September 5, 2007.

■ Although the court has not been furnished a copy of the Form 5 as actually filed in this case, this court, from long experience, takes judicial notice of the pertinent language of Form 5. The first and most important words appear in the upper lefthand corner. A prominent block contains the capitalized words "CHARGE OF DISCRIMINATION". Of lesser significance, but entirely consistent with the caption, is a place in Form 5 for the complain-ant to "swear and affirm the above **charge** is true to the best of my knowledge information and belief." (emphasis added). The "Intake Questionnaire" conspicuously refers to the "**charge**" as being a future occurrence. A "**charge**" can be amended, but it is distinct from an "Intake Questionnaire", which perhaps also can be amended, but cannot be treated as a "Charge of Discrimination".

EEOC is like any other litigant. It cannot make up special procedural or substantive rules for itself to suit its circumstances. On July 21, 2007, on August 8, 2007, on August 21, 2007, and on September 5, 2007, 29 C.F.R. § 1601.12, a regulation promulgated by EEOC, was in effect. This rule first sets forth what must be contained in a "**charge**". It then proceeds to provide some leeway to the complaining party to amend or elaborate the "**charge**". However, the rule never, either expressly or impliedly, suggests that an "Intake Questionnaire" is, or can be, a substitute for a "Charge of Discrimination". A "**charge**" can be amended, but there must first be a "**charge**" to be amended.

It is undisputed that on August 8, 2007, EEOC mailed the following letter to the complaining party:

Dear **REDACTED**

We received your correspondence and accordingly, we have drafted a charge. We cover discrimination based on race, color, sex, age, religion, national origin, retaliation, and disability.

Please date and sign each copy of the **Charge of Discrimination** in the lower left hand corner indicated by the X marks and return to the undersigned **within 30 days** of the date of this letter. If the executed **charge** is not returned with this time, the **charge** will be administratively closed in accordance with our

procedural regulations and no further action will be taken.

Sincerely,

s/

Ruby Morris

Investigative Support Assistant

(emphasis on words "within 30 days" in original, other emphasis added).

This letter was obviously written in response to "correspondence" from the complaining party. The complaining party's said correspondence is not in the record. It is impossible to tell the exact date upon which EEOC received the correspondence to which it responded on August 8, 2007. If a **"Charge of Discrimination"** had been received on September 5, 2007, it would, of course, have been timely. On August 8, 2007, EEOC enclosed to complainant copies of Form 5, as **"drafted"** by EEOC, for the signature of the complaining party. (emphasis added). EEOC's letter of August 8, 2007, is unequivocal. Although mistaken, it makes clear that the complaining party must sign and return the "Charge of Discrimination" **"within 30 days"** (emphasis in original). September 5, 2007, the date of receipt by EEOC, was within 30 days of the erroneous date provided by EEOC in its August 8, 2007 letter, but it was after August 21, 2007, the date upon which the 180 days expired. The complaining party, arguing now through EEOC, followed the advice of EEOC, and overlooked or ignored the clear requirements of the applicable federal statute, which plainly requires a "charge" to be filed within 180 days of the adverse employment decision.

■ If an error like this, made by EEOC, and then by its client, can be forgiven or overlooked, and can provoke an extension of the 180-day deadline, then any and every "Intake Questionnaire" can be readily transmogrified into, or treated as, a "Charge", and Form 5 can be dispensed with entirely. The fact that EEOC

may have inadvertently mislead the complaining party provides no escape from a statute of limitations that is clear and absolute. Would EEOC have filed this suit if complainant's Form 5 had not been received by it within the demanded 30 days after August 8, 2007? Would EEOC have filed this suit if its letter of August 8, 2007, had erroneously said "90 days" instead of erroneously said "30 days" and complainant had complied on the 89th day? EEOC understandably may feel some obligation to complainant, but it asks for too much. Its error is attributable to its client.

The magistrate judge baked a solid cake. The district court will be forgiven for adding a bit of frosting.

An appropriate order will be entered separately.

## REPORT AND RECOMMENDATION

ROBERT R. ARMSTRONG, JR., United States Magistrate Judge.

This is a civil action brought by the Equal Employment Opportunity Commission ("EEOC") against Summer Classics, Inc., for violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. The complaint alleges that the defendant wrongfully terminated Larry Lowe after learning that Lowe was HIV positive and he refused to respond to the defendant's inquiries concerning his medical condition.[1]

The case comes before the court on the defendant's second motion for summary judgment. (Doc. 15.)

## STANDARD OF REVIEW

In considering a motion for summary judgment, the court must determine whether the moving party is entitled to

---

1. "Larry Lowe" is a pseudonym for the person who suffered the alleged discrimination.

judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir.1991). Once that initial burden has been carried, the non-moving party may not merely rest upon his pleadings, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Barfield v. Brierton,* 883 F.2d 923 (11th Cir.1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Bennett v. Parker,* 898 F.2d 1530 (11th Cir.1990).

## ANALYSIS

The parties have extensively briefed a number of issues in this case. However, if the charge of discrimination was not timely filed, dismissal would be appropriate for that reason alone.

As an administrative prerequisite to filing suit under Title VII, an employee must file a timely charge of discrimination with the EEOC. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Morrow v. Auburn Univ. Montgomery,* 973 F.Supp. 1392, 1400 (M.D.Ala.1997); 42 U.S.C. § 2000e–5(e)(1). Likewise, to assert a claim under the ADA, an employee "must comply with the same procedural requirements to sue under Title VII," and thus, a timely EEOC charge is required under the ADA as well. *See, e.g., Fry v. Muscogee County Sch. Dist.,* 150 Fed.Appx. 980, 981–982, 2005 WL 2596880 *1 (11th Cir.2005); *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1339 (11th Cir. 1999); *Wagner v. Texas A & M Univ.,* 939 F.Supp. 1297, 1308 (S.D.Tex.1996); *Harbuck v. Kelley Foods of Ala., Inc.,* 2006 WL 827109 at [*]2 (M.D.Ala.2006); 42 U.S.C. § 12117(a) (applying remedies and procedures of Title VII to ADA).

The requirement that an employee file a charge with the EEOC serves an important purpose. It triggers the investigatory and conciliatory procedures of the EEOC. *Sanchez [v. Standard Brands, Inc.],* 431 F.2d [455] at 466 [ (5th Cir.1970) ]. Thus, the charge must enable the EEOC to serve its administrative enforcement role by conducting a full investigation while also providing the employer with advance notice of the claim and an opportunity to resolve the dispute. *See, e.g., Gregory [v. Georgia Dept. of Human Resources],* 355 F.3d [1277] at 1279–8 [ (11th Cir. 2004) ] (collecting cases discussing the purpose of the administrative exhaustion requirement). Another important purpose of the charge requirement is that is serves to notify the employer of the allegations made against it. *See Wilkerson v. Grinnell Corp.,* 270 F.3d 1314, 1319 (11th Cir.2001).

. . . .

To be timely within a non-deferral state, such as Alabama, the charge must be filed within 180 days of the last discriminatory act. 42 U.S.C. § 2000e–5(e)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 421 F.3d 1169, 1178 (11th Cir.2005) (explaining that Alabama is a non-deferral state). Because the 180 day filing requirement is not a jurisdictional requirement, it may be subject to equitable tolling in certain circumstances. *Sturniolo v. Sheaffer, Eaton, Inc.,* 15 F.3d 1023, 1025 (11th Cir.1994).

. . . .

In addition to being timely filed, a charge of discrimination must be properly executed. EEOC regulations require an EEOC charge to be signed and verified. *See* 42 U.S.C. § 2000e–5(b) ("Charges shall be in writing under oath or affirmation and shall contain such information and be in such form as the [EEOC] requires."); 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified."). The verification requirement is mandatory, and failure to properly verify an EEOC charge may bar a plaintiff from litigating her claim pursuant to Title VII. *See Vason v. City of Montgomery,* 240 F.3d 905, 907 (11th Cir.2001) (affirming summary judgment in employer's favor where plaintiff failed to make her charge of discrimination under oath or affirmation).

*Houston v. Army Fleet Services, L.L.C.,* 509 F.Supp.2d 1033, 1040–41 (M.D.Ala. 2007).

■ It is undisputed that Lowe filed a wrongful termination charge with the EEOC on September 5, 2007. It is also undisputed that Lowe was terminated on February 23, 2007. As the time between termination and the time before filing with the EEOC is more than 180 days, the plaintiff's discrimination charge was un-

timely filed. Although the plaintiff does not dispute this fact, it contends that Lowe's "intake questionnaire," submitted to the EEOC on July 31, 2007, within 180 days of his termination, constitutes a valid charge of discrimination, as it is equivalent to filing a charge of discrimination with the EEOC. The plaintiff asserts:

The Commission received Mr. Lowe's completed intake questionnaire and handwritten statement on July 31, 2007—within the filing period. The intake form in use at that time included a statement that the Commission would consider the intake form to be a sufficient charge of discrimination consistent with federal regulations if it was sufficiently precise to identify the parties and describe the action of which was complained. Accordingly, when Mr. Lowe's intake form was received, it was assigned a charge number and the Commission prepared a formal charge form for Mr. Lowe's signature. Agency staff wrote to Mr. Lowe to instruct him to return the charge form on or before September 7, 2007—a date outside the 180 day deadline. A jury could find that the Commission accepted the July 31, 2007 intake form and handwritten statement as sufficient, and then obtained a formal, verified charge relating back to July 31, 2007, all in accordance with agency regulations.

(Doc. 26, pp. 37–38.)

In support of its position, the EEOC cites the Supreme Court case of *Federal Express Corporation v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), where the court held that, in the context of the ADEA, an intake questionnaire *could* be considered a charge. A careful examination of that case is appropriate.

In *Holowecki,* the plaintiff brought an action under the Age Discrimination in

Employment Act (the "ADEA"). The ADEA contains the following provisions:

"No civil action may be commenced by an individual under [the ADEA] until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission....

.....

"Upon receiving such a charge, the Commission shall promptly notify all persons named in such charge as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d).

*Id.* at 395, 128 S.Ct. 1147. The defendant in *Holowecki* moved to dismiss the case, contending that the plaintiff had failed to file a charge with the EEOC at least 60 days before filing suit. *Id.* at 394, 128 S.Ct. 1147. The plaintiff countered by saying that she filed a valid charge when she submitted an intake questionnaire like the one in the instant case. *Id.*

The Court began its analysis with an important warning:

As a cautionary preface, we note that the EEOC enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII of the Civil Rights Act of 1964, 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.,* and the Americans with Disabilities Act of 1990, 104 Stat. 327, as amended, 42 U.S.C. § 12101 *et seq. While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. This is so even if the EEOC forms and the* *same definition of charge apply in more than one type of discrimination case.* *Id.* at 393, 128 S.Ct. 1147 (emphasis added). The court then noted that "[t]he Act does not define charge." *Id.* at 395, 128 S.Ct. 1147. The court was then forced to examine the EEOC regulations to determine the definition of "charge." After considerable discussion, the court concluded that because "the regulations do not state all the elements a charge must contain, the question of what additional elements are required remains." *Id.* at 398, 128 S.Ct. 1147. After a review of the EEOC's policy statements on the issue, the court determined:

In addition to the information required by the regulations, *i.e.,* an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee.

*Id.* at 402, 128 S.Ct. 1147.

The court then examined the questionnaire at issue:

Respondent's completed intake form contained all of the information outlined in [the regulations], including: the employee's name, address, and telephone number, as well as those of her employer; an allegation that she and other employees had been the victims of "age discrimination"; the number of employees who worked at the Dunedin, Florida, facility where she was stationed; and a statement indicating she had not sought the assistance of any government agency regarding this matter....

Petitioner maintains the filing was still deficient because it contained no request for the agency to act. Were the Intake Questionnaire the only document before us we might agree its handwrit-

ten statements do not request action. The design of the form in use in 2001, moreover, does not give rise to the inference that the employee requests action against the employer. Unlike EEOC Form 5, the Intake Questionnaire is not labeled a "Charge of Discrimination[.]" In fact the wording of the questionnaire suggests the opposite: that the form's purpose is to facilitate "pre-charge filing counseling" and to enable the agency to determine whether it has jurisdiction over "potential charges." There might be instances where the indicated discrimination is so clear or pervasive that the agency could infer from the allegations themselves that action is requested and required, but the agency is not required to treat every completed Intake Questionnaire as a charge.

In this case, however, the completed questionnaire filed in December 2001 was supplemented with a detailed six-page affidavit. At the end of the last page, respondent asked the agency to "[p]lease force Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of *Best Practice/High–Velocity Culture Change.*" This is properly construed as a request for the agency to act.

*Id.* at 404–05, 128 S.Ct. 1147.

Here, the EEOC argues that the questionnaire complies with the requirements of the regulations. (Doc. 26, p. 36–37.) However, in citing *Holowecki* and arguing compliance with the regulations at issue, the EEOC has failed to heed the Supreme Court's warning to "be careful not to apply rules applicable under one statute to a different statute without careful and critical examination." *Holowecki,* 552 U.S. at 393, 128 S.Ct. 1147. In *Holowecki,* an ADEA case, the Supreme Court was forced to review the regulations for a definition of the term "charge," because the statute contained no such definition. In the instant case, an ADA case, the statute *does* define charge, or at least set out the requirements for a charge.

■ The ADA provides that "the powers, remedies, and procedures set forth in sections 2000e–4, 2000e–5, 2000e–6, 2000e–8, and 2000e–9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment." 42 U.S.C.A. § 12117. Accordingly, 42 U.S.C. § 2000e–5(b) is incorporated into the ADA. That statute provides unequivocally that "[c]harges shall be in writing under oath or affirmation." 42 U.S.C. § 2000e–5(b). That requirement is mandatory, and the failure to verify a charge is grounds for granting summary judgment. *Vason v. City of Montgomery, Ala.,* 240 F.3d 905, 907 (11th Cir.2001).

In the instant case, the first section of the four-page questionnaire allows an individual to provide personal information such as her name, address, sex, and disability status. Next, the questionnaire asks for the person's employer's name, address, and business information. The third section asks for the person's employment data (her wage, job title, supervisor's name). Thereafter, the questionnaire asks about the "reason (basis) for your claim of discrimination." Lowe wrote that she was sent home and fired for refusing to give medical records to her employer concerning her HIV positive status. She also lists the name of a witness, and states that she has sought workers' compensation. She attaches to the questionnaire the following written statement:

I believe that the discrimination started in January 2007, But [sic] feel as though the actual crime on summer classics [sic] part, [sic] came on Feb. 20–23, 2007, when I received a certified letter from Faby Clark stating that because I would not give her HIV medical records, I was being terminated.

I am in good physical health [sic] However, since all this has started, it has made me so very depressed because all I think about is this case. It is causing me fatigue, lack of sleep & appetite including having to mentally think about my HIV constantly.

(Doc. 26–6, p. 6.) Finally, a review of the intake questionnaire shows that it is not sworn, but merely signed by Lowe. (Doc. 26–6, p. 5.)

The questionnaire fails because it is not sworn, as required by the stature in this case. The addition of a sworn statement was also critical in the court's judgment in *Holowecki*, which accepted the questionnaire as a charge. Thus, even under *Holowecki*, the questionnaire fails. Also, unlike the questionnaire in *Holowecki*, here there is no request for action. Finally, the court finds no support for the plaintiff in *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314 (11th Cir.2001). In that case, the questionnaire was verified. The one in the case before this court is not.

## RECOMMENDATION AND NOTICE OF RIGHT TO FILE OBJECTIONS

Wherefore, it is RECOMMENDED that the motion for summary judgment be granted and this case dismissed.

Any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

DONE this 17th day of May, 2011.

## *MEMORANDUM OPINION ON MOTION FOR RECONSIDERATION*

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), is taking its fourth bite at the apple. First, before the magistrate judge it strenuously opposed the motion for summary judgment filed by defendant, Summer Classics, Inc. ("Summer Classics"). Second, it objected to the magistrate judge's report, in which the magistrate judge recommended that defendant's motion for summary judgment be granted. Third, it vigorously responded to defendant's brief filed in opposition to plaintiff's objections to the magistrate judge's report and recommendation. After this court accepted the magistrate judge's recommendation, EEOC now takes its fourth bite by invoking Rule 59(e), F.R.Civ.P., challenging both this court's decision and that of the magistrate judge.

From the very beginning of this case, EEOC, as its primary contention, has insisted that the filing of the "Intake Questionnaire" by its client, Larry Lowe, qualified as a "Charge" for the purposes of meeting the 180–day time limit for the filing of a "Charge" after the employer's last adverse employment action. Only as an alternative, or "fallback" position, did EEOC argue that Mr. Lowe's termination occurred on March 23, 2007, and not on

February 23, 2007, as the magistrate judge found. If the last act of ADA discrimination occurred on February 23, 2007, as both the magistrate judge and this court have already found, this action is time barred, no matter how persuasive plaintiff's case may be on the merits. Of course, if the last adverse action took place on March 23, 2007, as EEOC contends, the action is not time barred because the actual "Charge of Discrimination" was filed less than 180 days thereafter.

In its Rule 59(e) motion, EEOC does not retreat from its primary earlier insistence that the "Intake Questionnaire" is to be treated as the "Charge of Discrimination". EEOC must still think this is its best argument. Nevertheless, it now concentrates its fire on the magistrate judge's following finding: "It is also undisputed that Lowe was terminated on February 23, 2007." (emphasis added). Neither EEOC nor this court has quizzed the magistrate judge to ascertain precisely how he reached his conclusion as to the triggering date. The finding may speak for itself, but under Rule 59(e) reconsideration, the court will examine the question again.

Insofar as the issue of whether the "Intake Questionnaire" is to be considered a "Charge", this court and the magistrate judge both have made their decisions, and their reasons have been made perfectly clear. They will not be repeated for the third time. But, the court will further answer EEOC's expanded argument that the "Intake Questionnaire" includes a request for action by EEOC, so that it meets standards for a "Charge". This argument facially collapses from a careful reading of the entire "Intake Questionnaire". After the "Intake Questionnaire" was submitted, there was a follow-up letter from Mr. Lowe to EEOC. Mr. Lowe's said letter is conspicuously absent from the record. The court does not know when it was

delivered or what it said. Mr. Lowe may simply have asked EEOC what to do next, or to express his disappointment in not finding a lawyer. There could, of course, be other explanations for this void in the record. The court only knows that EEOC answered Mr. Lowe on August 8, 2007, indicating that, as of August 8, 2007, EEOC had taken no action whatsoever in response to the "Intake Questionnaire". If EEOC wants this court to take the "Intake Questionnaire" as a clarion call for action, how does EEOC explain its lack of action between the receipt of the "Intake Questionnaire" on July 21, 2007, and its letter of August 8, 2007? Mr. Lowe later, on September 5, 2007, did ask EEOC for action in his "Charge of Discrimination", but he requested no action on July 21, 2007, in his "Intake Questionnaire".

Although the parties, the magistrate judge, and the court have all previously examined *Edelman v. Lynchburg College,* 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002), and *Federal Express v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147, 170 L.Ed.2d 10 (2008), for the lessons they teach, nobody has yet analyzed *Williams v. CSX Transportation Co.,* 643 F.3d 502 (6th Cir.2011), not decided until June 28, 2011. *Williams* dealt both with *Edelman* and *Holowecki,* but on June 28, 2011, the Sixth Circuit agreed with this court's interpretation of the two earlier Supreme Court cases. The Sixth Circuit held:

> Put differently, **a filing is a charge if an "objective observer" would believe that the filing "taken as a whole" suggests that the filer "requests the agency to activate its machinery and remedial processes".** [citation omitted] (emphasis added).

EEOC's machinery was certainly not activated by anything Mr. Lowe said on July 21, 2007. The Sixth Circuit followed its above quoted holding with a pointed re-

minder that in *Holowecki* the filer had **expressly** requested EEOC in his "Intake Questionnaire" to "**[p]lease force Federal Express to end their age discrimination.**" (emphasis added). In other words, in *Holowecki* there was an unmistakable call for action. No "objective observer" could conclude that Mr. Lowe's "Intake Questionnaire" was a call for action. It only answered EEOC's questions. EEOC lamely argues that Mr. Lowe's statement in the questionnaire that he was "looking for a lawyer" is the equivalent of asking for EEOC action. This is a bridge too far, a spin too much. EEOC's interpretation fails to acknowledge Mr. Lowe's plain language. EEOC is afflicted with "after-the-fact" wishful thinking.

Perhaps EEOC inadvertently assumed, and wants this court to assume, that Mr. Lowe's "Intake Questionnaire", which was received within 180 days after February 23, 2007, contained the following language now contained in EEOC's latest, amended form of "Intake Questionnaire". EEOC's adoption of this amended form could very well have been prompted by the circumstances in the instant case. The court takes judicial notice of the new EEOC intake form. It has been offered to this court and to other courts as evidence in more recently filed cases. The current form of the "Intake Questionnaire" concludes with the following graphic and unmistakably significant boxes:

*BOX 1* [ ]

I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, reli-

gion, sex, national origin, disability, age, or retaliation for opposing discrimination.

*BOX 2* [ ]

I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

The old form, used by Mr. Lowe, unfortunately for him and EEOC, did not include these boxes. If Mr. Lowe had used the current "Intake Questionnaire", he might have checked Box 1, and by doing so, would have requested action by EEOC. The court, however, does not deal in what "might-have-been". The court is limited to the words contained within the four corners of Mr. Lowe's actual "Intake Questionnaire", which, as pointed out *supra*, does not request any action. This does not mean that this court agrees with EEOC's contention that if the slightest possibility of EEOC action is hinted at by a claimant in his "Intake Questionnaire", the subsequent filing of a "Charge of Discrimination" is a mere **redundancy**. Hypothetically, if Box 2 had been available to Mr. Lowe, EEOC would have been reiterating and reinforcing the dire warning to Mr. Lowe highlighted in the first paragraph of the intake form, new and old, clearly distinguishing between an "Intake Questionnaire" and a "Charge of Discrimination", and explaining the crucial importance of that difference.

■ This leaves the court to reconsider EEOC's secondary and final contention, namely, that the last act of discrimination occurred on March 23, 2007, and not on February 23, 2007, the date found by the magistrate judge and previously confirmed by this court.

Tellingly, EEOC did not file a motion for partial summary judgment respecting the triggering date. If, as it now contends, March 23, 2007 is the undisputed date of termination, conceded by Summer Classics, EEOC would surely have wanted to eliminate the issue while Rule 56 was still available to it. The court cannot find any such concession by Summer Classics in the record. To the contrary, Summer Classics has always taken the position that the triggering date was February 23, 2007. After losing its phantom partial summary judgment motion, EEOC now retreats to saying that if there is a dispute of material fact about the triggering date, it becomes a jury triable issue. For the existence of a jury issue, EEOC hangs its hat on the fact that a letter from Summer Classics to Mr. Lowe, dated March 26, 2007, referred to his termination "**as of** March 23, 2007" (emphasis added). Mr. Lowe had been told in advance of **February 23, 2007**, that he would be terminated on February 23, 2007, and that he would **not be paid after February 23, 2007**. And, as promised, he was **not paid after February 23, 2007**.

### Undisputed Pertinent Evidence on the Triggering Date

1. The original complaint filed by EEOC on September 29, 2009, and not thereafter amended, nowhere alleges a date upon which Summer Classic's last alleged act of proscribed conduct occurred. Instead, it vaguely alleges: "All conditions precedent to the institution of this lawsuit have been fulfilled." EEOC undertook the burden of proving its said material allegation, which, in this particular case, happens to include the triggering date for the 180-day time limitation. **In fact, Mr. Lowe, himself, whether by mouth or in writing, has never asserted that March 23, 2007, was the date of his termination, or was the date of any other adverse or discriminatory action.**

2. On February 21, 2007, Summer Classics wrote a letter to Mr. Lowe. It contained the following language:

> The purpose of this letter is to inform you that you have until Friday, **February 23, 2007**, to provide our Medical Review Officer with the requested information. If we have not received the requested information by 5:00 p.m. on Friday, we are left with no other alternative than to place you on unpaid leave and take action up to and including termination of your employment. We hope that you can provide the information by the end of the week and that you will be able to safely return to work.

(emphasis added).

3. On **March 11, 2007**, Mr. Lowe filed a claim for unemployment compensation with the Alabama Department of Industrial Relations. He obviously could not, and did not, claim that **March 23, 2007**, was his date of termination. March 23, 2007, had not yet arrived on March 11, 2007. Summer Classics responded to the compensation claim by saying, *inter alia*, "Claimant's last date of employment was 03/23/07." This was merely a repetition of a routine bookkeeping entry and is facially irreconcilable with the March 11, 2007 date upon which Mr. Lowe's compensation claim was filed.

4. On March 26, 2007, three days after March 23, 2007, Summer Classics wrote Mr. Lowe another letter, containing the following language:

> On February 21, 2007, we provided you with a letter requesting that you submit to such examination and provide the requested information no later than **February 23, 2007**, or you would be placed on unpaid leave and disciplinary action up to and including termination of your employment would occur ... In view of the circumstances, the company has no alternative but to terminate your em-

ployment **effective on March 23, 2007,** for failure to provide the medical information requested.

**You received your last pay check from the company on February 23, 2007. No further payments will be made.** (emphasis added).

5. The said letter of March 26, 2007, did not lead Mr. Lowe to conclude that the last act of discrimination was on March 23, 2007, or on March 26, 2007, the date on the letter, or on March 27, 2007, the date Mr. Lowe probably received it. The date "March 23, 2007", as employed by Summer Classics, obviously was for its internal administrative or bookkeeping purposes, and for no substantive purpose. There is no evidence of **any real adverse action whatsoever** taken by Summer Classics *vis-a-vis* Mr. Lowe, at any time after February 23, 2007. Summer Classic's letter of March 26, 2007, merely confirmed what had happened on February 23, 2007.

6. On July 21, 2007, Mr. Lowe filed his controversial "Intake Questionnaire" with EEOC. In it, he never mentioned "March 23, 2007". Instead, he simply and unequivocally stated: **"I was fired on February 23, 2007."** (emphasis added). In a supplementary attachment he said:

I believe that the discrimination started in January 2007, but feel as though the **actual crime on Summer Classics part came on Feb. 20–23, 2007,** when I received a certified letter from Faby Clark stating that because I would not give her HIV medical records I was being terminated.

(emphasis added).

Mr. Lowe did not assert that anything whatsoever happened on March 23, 2007. In fact, **nothing to suggest an ADA cause of action happened on March 23, 2007.**

7. On September 5, 2007, Mr. Lowe finally got around to filing his **required** "Charge of Discrimination", using the Form 5 that had been sent to him by EEOC on August 8, 2007, and in which it again warned him that a "Charge of Discrimination" must be filed if his claim was to be **acted on** by EEOC. On August 8, 2007, EEOC was admitting that it had taken no action in response to the "Intake Questionnaire", and would take no action unless and until a "Charge" was filed. In the **actual** "Charge of Discrimination", Mr. Lowe, again, never mentioned "March 23, 2007". Instead, he declared, this time **under penalty of perjury:**

On **February 23, 2007,** the human resources director informed me by letter that I was discharged because I failed to provide her a copy of my medical records.

(emphasis added).

Mr. Lowe's said Form 5 filed on September 5, 2007, after the 180–day expiration date, also contained the following dispositive facts that he swore to be true:

DATE[S] DISCRIMINATION TOOK PLACE

| Earliest | Latest |
| --- | --- |
| 02/23/2007 | 02/23/2007 |

(capitals in original; emphasis added).

8. During deposition, Mr. Lowe testified under oath, entirely consistent with his EEOC and unemployment compensation filings, as follows:

Q. Let me show you Defendant's Exhibit 12 and tell me what that is.

A. **It's a letter from Faby Clark.**

Q. And did you receive this by mail:

A. **Yes, sir.**

Q. And it says that they terminated your employment effective March 23rd, '07; is that right?

A. **Yes, sir.**

**Q.** What did you do after you received this letter?

**A.** It was just a couple of days after I had received the other one, so I didn't understand what the purpose of this was if she had already fired me in the previous letter.

**Q.** Okay, where does she fire you in the previous letter?

**A.** Right here saying if I didn't have these releases by 5:00 on Friday, that she would have no alternative than to leave [sic] my actions, terminating my employment.

\* \* \* \* \* \*

**Q.** Okay. And then going to the right, date discrimination took place, 2/23/07, that was the earliest, and 2/23/07 was the latest?

**A.** Yes, sir.

**Q.** And what is the significance of that date?

**A.** That was my official termination date per her first letter.

\* \* \* \* \* \*

**Q.** Okay. And then on February 23rd, 2007, the human resource director informed you by letter that you were discharged because you failed to provide her a copy of my medical records; is that correct?

**A.** Yes, sir.

**Q.** And, again, we're referring back to this February 21 letter that states—let me find it. And that's Defendant's Exhibit 11?

**A.** Yes, sir.

**Q.** That says if we have not received the requested information by 5:00 p.m. on Friday, we will be left with no other alternative than to place you on unpaid leave and take action up to and including termination of your employment.

**A.** Yes, sir.

**Q.** And you took that to mean that you were terminated as of the 23rd?

**A.** Yes, sir.

### Discussion

Mr. Lowe frankly admits that he was fired on February 23, 2007, and not on March 23, 2007. This is proven by words out of his own mouth, by his own written statements, and by the fact that he could not have filed a claim for unemployment compensation on March 11, 2007, if his termination date had not yet arrived. If he had had any expectation whatsoever of further employment after February 23, 2007, he gave not the slightest indication of it, that is, until EEOC latched on to it. With everything Mr. Lowe himself has said and done, he has reinforced his own sworn belief, a belief that EEOC does not share with him, but by which both Mr. Lowe and EEOC are bound.

What if, instead of being written on **March 26, 2007**, Summer Classics's routine post-termination letter had been written on **April 26, 2007**, and the writer had therein said, "You will be effectively terminated **as of May 23, 2007**"? Would the **last act of discrimination** have taken place on **February 23, 2007**, or on **April 26, 2007**, the date of the mailing of the letter, or on **April 27, 2007**, the date Mr. Lowe would have received the letter, or on **May 23, 2007**, the "as of" bookkeeping date?

EEOC understandably does not request equitable tolling of the 180–day limitation period. It depends solely upon the internal bookkeeping "termination date", a day upon which Summer Classics did absolutely **nothing** vis-a-vis Mr. Lowe. If there is any equitable principle involved here, it is that Mr. Lowe is estopped, as is EEOC vicariously. Mr. Lowe asserted under

oath, more than once, that the last act of discrimination occurred on February 23, 2007. Necessity is the mother of invention, but the originally unspecified, later discovered, date is illusory. Unpaid leave, after a well communicated order of dismissal, is not an adverse employment action. It is nothing more than an internal reconciliation of the company's books.

The court recognizes that under Rule 56, F.R.Civ.P., there is no burden of proof on the non-movant. Nevertheless, the evidence above set forth, construed most favorably to EEOC, the non-movant, is not enough to meet EEOC's burden of proof of **the facts essential to making out its case.** In this case, that burden includes a proving of the date of the last discriminatory act. To reiterate, the burden is on EEOC to prove that Summer Classics's last adverse employment action occurred less than 180 days before the "Claim" was filed. EEOC does not, and cannot, meet this burden.

In effect, EEOC is Mr. Lowe's lawyer. A lawyer cannot gainsay what his client has consistently, under oath, asserted. In *Scott v. Harris,* 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), the Supreme Court held that a genuine issue of material fact cannot be created merely by the non-movant's version of a dispositive fact **if his said contention is simply beyond belief.** Obviously, such circumstances are rare. They did, however, exist in *Scott v. Harris,* and do exist in this case. A party cannot claim a dispute of material fact if he contradicts what he has previously and unequivocally said under penalty of perjury. *See Thomas v. Alabama Council on Human Relations,* 248 F.Supp.2d 1105 (M.D.Ala.2003); MOORE'S FEDERAL PRACTICE 3rd, § 56.94[5][a]. There is no point in waiting for Summer Classic's inevitable Rule 50 motion. To present this case to a jury would be a waste of judicial time and effort, as it was in *Scott v. Harris.* All of the undisputed evidence pertinent to the triggering date is now before the court.

There are two decisions by the Eleventh Circuit that, singly, and in combination, resolve any remaining legal question. The first is *Baldwin County, Ala. v. Purcell Corp.,* 971 F.2d 1558 (11th Cir.1992). The other is *Mendoza v. Borden, Inc.,* 195 F.3d 1238 (11th Cir.1999). In *Baldwin County,* the Eleventh Circuit held:

> The [Supreme] Court has instructed, therefore [referring to *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)] that the trial judge "must view the evidence presented through the **prism of the substantive evidentiary burden**" when deciding a summary judgment motion.

(emphasis added).

*Id.* at 1563.

The "substantive evidentiary burden" of proving the triggering date is on EEOC, as pointed out *supra.* In *Mendoza,* the *en banc* Eleventh Circuit slammed the door on EEOC even tighter, holding:

> Although the existence of a genuine issue of material fact precludes judgment as a matter of law, **"a jury question does not exist because of the presence of a 'mere scintilla of evidence' "**. [citation omitted] A motion for judgment as a matter of law will be denied only if "reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." [citation omitted] These standards require us to consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law". [citation omitted] **"If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict, then the {Rule 56}**

**motion was properly granted.** [citation omitted].

(emphasis added).

If a jury were allowed to see and hear all of the evidence above outlined, a motion filed by Summer Classics pursuant to Rule 50, would have to be granted. There is no way that a reasonable jury would conclude on this evidence that the last employment action adverse to Mr. Lowe occurred on March 23, 2007. If the passing references by Summer Classics to "March 23, 2007", in its wind-up correspondence constitutes a **scintilla of evidence** on the issue, it is totally overwhelmed by the other evidence, by logic, and by estoppel. Any conclusion other than that previously reached by the magistrate judge and by this court, cannot be justified unless by understandable sympathy for Mr. Lowe, and perhaps by understandable sympathy for EEOC. It cannot be justified by the law as this court understands the law.

### *Conclusion*

A separate order denying EEOC's Rule 59(e) motion will be entered.

DONE this 3rd day of August, 2011.